# 13-2742 (L)

## 13-2747 (CON) and 13-2748 (CON)

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

MONIQUE SYKES, *et al.*, individually and on behalf of all other similarly situated,
Plaintiffs-Appellees,

v.

MEL S. HARRIS AND ASSOCIATES LLC, *et al.*,
Defendants-Appellants,
and
MEL HARRIS JOHN/JANE DOES 1-20, *et al.*,
Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR THE CONSUMER FINANCIAL PROTECTION BUREAU
AND FEDERAL TRADE COMMISSION
AS AMICI CURIAE SUPPORTING PLAINTIFFS-APPELLEES**

JONATHAN E. NUECHTERLEIN
*General Counsel*

JOHN F. DALY
*Deputy General Counsel for Litigation*

THEODORE (JACK) METZLER
*Attorney*

FEDERAL TRADE COMMISSION

MEREDITH FUCHS
*General Counsel*

TO-QUYEN TRUONG
*Deputy General Counsel*

DAVID M. GOSSETT
*Assistant General Counsel*

SARANG VJIAY DAMLE
*Senior Counsel*

JESSICA RANK DIVINE
*Attorney*

CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street NW
Washington DC 20552
(202) 435-7069

November 13, 2013

# TABLE OF CONTENTS

GLOSSARY

INTRODUCTION.................................................................................................. 1

STATEMENT ....................................................................................................... 3

    I.       Statutory Background ................................................................. 3

    II.      Factual and Procedural Background ........................................... 5

ARGUMENT ....................................................................................................... 8

    There Is No Blanket Immunity From FDCPA Liability For Conduct
    Directed To Third Parties. ....................................................................... 8

CONCLUSION .................................................................................................. 24

CERTIFICATES OF COMPLIANCE AND SERVICE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Allen v. LaSalle Bank, N.A.,*
629 F.3d 364 (3d Cir. 2011) ...................................................... 19, 22

*Atlantic Cas. Ins. Co. v. RJNJ Services, Inc.,*
932 N.Y.S.2d 109 (App. Div. 2d Dep't 2011) ............................... 14

*Evory v. RJM Acquisitions Funding, LLC,*
505 F.3d 769 (7th Cir. 2007) ............................................... 19, 22, 23

*Gagen v. Kipany Productions Ltd,.,*
735 N.Y.S.2d 225 (App. Div. 3d Dep't 2001) ............................... 14

*Goldman v. Cohen,*
445 F.3d 152 (2d Cir. 2006) ........................................................ 11

*Guerrero v. RJM Acquisitions LLC,*
499 F.3d 926 (9th Cir. 2007) ....................................................... 22

*Heintz v. Jenkins,*
514 U.S. 291 (1995) ........................................................ 11, 15, 17

*Hemmingsen v. Messerli & Kramer, P.A.,*
674 F.3d 814 (8th Cir. 2012) .................................................. 10, 18

*Hooks v. Forman, Holt, Eliades & Ravin, LLC,*
717 F.3d 282 (2d Cir. 2013) ........................................................ 12

*Hubbard v. United States,*
514 U.S. 695 (1995) .................................................................... 21

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
559 U.S. 573 (2010) ............................................................ passim

*Keele v. Wexler,*
149 F.3d 589 (7th Cir. 1998) ..................................................... 3, 4

*Kropelnicki v. Siegel*,
  290 F.3d 118 (2nd Cir. 2002) ............................................................ 21, 22

*Lewis v. City of Chicago*,
  130 S. Ct. 2191 (2010) ............................................................................ 15

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) .................................................................................. 12

*Mertens v. Hewitt Associates*,
  508 U.S. 248 (1993) ................................................................................ 15

*O'Rourke v. Palisades Acquisition XVI, LLC*,
  635 F.3d 938 (7th Cir. 2011) ............................................................ 19, 20

*Pipiles v. Credit Bureau of Lockport, Inc.*,
  886 F.2d 22 (2d Cir. 1989) ............................................................. passim

*Romea v. Heiberger & Associates*,
  163 F.3d 111 (2d Cir. 1998) .................................................................... 11

*Rusello v. United States*,
  464 U.S. 16 (1983) .................................................................................. 13

*Sayyed v. Wolpoff & Abramson*,
  485 F.3d 226 (4th Cir. 2007) ............................................................ 19, 22

*See Todd v. Collecto, Inc.,,*
  732 F.3d 734 (7th Cir. 2013) ............................................................ 13, 21

*Volden v. Innovative Fin. Sys.*,
  440 F.3d 947 (8th Cir. 2006) .................................................................. 18

## Statutes

15 U.S.C. § 1692 et seq. ........................................................................ 1, 3

15 U.S.C. §§ 1692b-1692j ......................................................................... 4

15 U.S.C. § 1692c(a) ............................................................................... 13

15 U.S.C. § 1692(e) ............................................................................. 16

15 U.S.C. § 1692e ........................................................................ passim

15 U.S.C. § 1692e(1)-(16) ..................................................................... 4

15 U.S.C. § 1692e(8) ...................................................................... 2, 12

15 U.S.C. § 1692f ........................................................................ passim

15 U.S.C. § 1692f(1)-(8) ....................................................................... 4

15 U.S.C. § 1692f(5) ..................................................................... 12, 13

15 U.S.C. § 1692k .......................................................................... 1, 15

15 U.S.C. § 1692l ........................................................................... 1, 16

N.Y. C.P.L.R. § 3215(f) ..................................................................... 6

## Rules

Fed. R. App. P. 23(f) ........................................................................... 8

Fed. R. App. P. 32(a)(5) and (6) ...................................................... 1

Fed. R. App. P. 32(a)(7)(B) ............................................................. 1

Fed. R. Civ. P. 11 .............................................................................. 17

Fed. R. Civ. P. 23(f) ............................................................................ 9

Fed. R. Civ. P. 29(a) ........................................................................... 1

## Other Authorities

Debt Collection (Regulation F), 78 Fed. Reg. 67848 (Nov. 12, 2013) ............................ 4

Federal Trade Commission, Annual Report 2010: Fair Debt Collection Practices Act
(2010)..................................................................................................... 4

Federal Trade Commission, Annual Report 2011: Fair Debt Collection Practices Act
(2011)..................................................................................................... 4

*Heintz v. Jenkins*,
No. 94-367, 1994 WL 706068 (1994) ........................................................ 17

*Jerman v. Carlisle*,
No. 08-1200, 2009 WL 4247965 (2009)...................................................... 17

S. Rep. No. 95–382 (1977) ........................................................................ 14

## GLOSSARY

| | |
|---|---|
| Bureau | Consumer Financial Protection Bureau |
| Commission | Federal Trade Commission |
| FDCPA | Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* |
| Harris Br. | Br. for Appellants Mel S. Harris and Assoc. LLC, *et al.*, Dkt. 54 |
| Leucadia Br. | Br. for Appellants Leucadia Nat'l Corp., *et al.*, Dkt. 43 |

# INTRODUCTION

Pursuant to Fed. R. Civ. P. 29(a), the Consumer Financial Protection Bureau respectfully submits this brief to address the scope of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*[1] The Bureau is joined in this brief by the Federal Trade Commission.

The Bureau and Commission have significant regulatory authority with respect to the Act. Together with other federal agencies, the Bureau and Commission enforce the FDCPA. 15 U.S.C. § 1692*l*. In addition, the Bureau has authority to issue advisory opinions interpreting the Act. *See* 15 U.S.C. § 1692k(e). Congress also granted the Bureau authority to "prescribe rules with respect to the collection of debts by debt collectors"—a power no agency previously had. 15 U.S.C. § 1692*l*(d). The Bureau and Commission therefore have a substantial interest in ensuring the proper interpretation of the Act.

Defendants ask this Court to adopt a sweeping exclusion from the FDCPA's coverage for "communications made either to third parties not affiliated with the debtors that the statute seeks to protect, or in circumstances otherwise having no chance of debtor deception." *See* Leucadia Br. at 35. But the plain text of the two provisions of the Act most directly at issue here, 15 U.S.C. §§ 1692e and 1692f, contains no such limitation. Section 1692e states that "[a] debt collector may not use

---

[1] The government expresses no view here regarding the class certification issues under Federal Rule of Civil Procedure 23.

*any* false, deceptive, or misleading representation or means *in connection with* the collection of any debt." Section 1692f provides, without limitation, that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Neither provision limits itself to communications to debtors. In fact, defendants' reading is contradicted by, among other provisions, 15 U.S.C. § 1692e(8), which prohibits as a "false, deceptive, or misleading representation or means" of collecting a debt, the act of "[c]ommunicating . . . to *any person* credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." This provision plainly protects consumers from debt collectors who provide false credit information to third parties such as credit reporting agencies.

Defendants' effort to cabin the plain sweep of this language through invocation of the Act's consumer-protection purposes falls wide of the mark. As this Court has stressed, "courts are not at liberty to excuse violations [of the FDCPA] where the language of the statute clearly comprehends them." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Indeed, the Act's purposes would be disserved through a reading that bars injured consumers from recovering against unscrupulous debt collectors simply because those debt collectors directed their misconduct at someone other than the consumers themselves. Moreover, the case law on which plaintiffs rely has either been substantially limited by later cases or is incorrect.

2

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum.

## STATEMENT

## I. STATUTORY BACKGROUND

Congress enacted the FDCPA in 1977 to eliminate "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Pub. L. No. 95-109, § 802, 91 Stat. 874, 874 (1977) (codified at 15 U.S.C. § 1692); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). Congress found that such abuses had "contribute[d] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* § 802(a). It also determined that "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers." *Id.* § 802(b). The FDCPA focuses on improper collection *practices* and does not distinguish between debts that are actually owed and those that are not. *See, e.g.*, *id.* § 1692e; § 1692f; *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists.")."

Improper collection practices continue to be of significant concern today. For many years, the Commission has received more consumer complaints about the debt

3

collection industry than any other. *See* Debt Collection (Regulation F), 78 Fed. Reg. 67848, 67851 (Nov. 12, 2013) (advanced notice of proposed rulemaking).[2] And since July 1, 2013, about thirty percent of all consumer complaints the Bureau has received have been about the debt collection industry. *Ibid*.

The FDCPA is a key federal statute protecting these consumers. To effectuate its purposes, the Act prohibits a broad range of practices pertaining to the collection of consumer debts by debt collectors. *See generally* 15 U.S.C. §§ 1692b-1692j. Two such prohibitions are most relevant here. First, the Act prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Second, the Act prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. Both of these provisions also set forth specific examples of conduct that violate the general bans. *Id.* § 1692e(1)-(16); § 1692f(1)-(8).

## II.  FACTUAL AND PROCEDURAL BACKGROUND[3]

1. This is a class-action lawsuit brought by consumers against a group of affiliated debt-buying companies, their outside law firm and certain of its attorneys,

---

[2] *See also* Federal Trade Commission, Annual Report 2011: Fair Debt Collection Practices Act 4 (2011), *available at* http://www.ftc.gov/os/2011/03/110321fairdebt collectreport.pdf; Federal Trade Commission, Annual Report 2010: Fair Debt Collection Practices Act 4 (2010), *available at* http://www.ftc.gov/os/2010/04/ P104802fdcpa2010annrpt.pdf.

[3] The factual discussion is drawn from the district court's class certification opinion, SA2-SA11, and the allegations in plaintiffs' third amended complaint, JA140.

and a process serving agency and its employees. SA3-SA4. Plaintiffs allege that defendants engaged in an unlawful scheme to obtain default judgments against the plaintiffs in debt-collection actions in New York City civil court. SA4-SA6. After obtaining these default judgments, the defendants were able to (among other things) freeze plaintiffs' bank accounts and garnish their wages. JA161.

According to plaintiffs, the scheme operated in the following manner: The debt buyers and law firm defendants jointly purchased large portfolios of defaulted debts. SA4; JA161; JA165. They then filed over 124,000 debt-collection actions over a three-year period in New York City civil court. SA6. The company hired to serve process on the putative debtors, however, frequently failed to properly execute service, instead engaging in what is colloquially known as "sewer service." *See* SA5-SA7; JA162. When the debtors failed to appear in court, defendants moved for default judgment. *See generally* JA162-JA166. Under New York law, a court may issue a default judgment only if the plaintiff provides "proof of service," generally in the form of an affidavit from the process server, and "proof of the facts constituting the claim, the default and the amount due," which can be supplied via an "affidavit of merit." N.Y. C.P.L.R. § 3215(f); *see also* SA5; JA160.

According to plaintiffs, the affidavits the defendants filed to satisfy these requirements were false. SA5. In the affidavits of service, the process servers "claim[ed] to have served [debtors] with legal process when they ha[d] not, in fact, done so." JA163. Plaintiffs explain that "although defendants secure default

5

judgments in tens of thousands of lawsuits every year, service of process in the majority of those lawsuits is allegedly done by only a handful of individual process servers." *Ibid.* Indeed, the district court found that "[r]ecords maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time," and "many other occasions where multiple services were purportedly made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed." SA6-SA7.

Furthermore, plaintiffs allege that the other defendants should have known that the service affidavits provided by the process servers were false. JA163. According to plaintiffs, defendants were "required to review each and every affidavit of service" before it is filed with the court, and so defendants would have been aware that a "small number of individual process servers" could not possibly have "serve[d] [such] an astoundingly large number of defendants." *Ibid.* Indeed, plaintiffs allege that the debt buyers and law firms "knowingly promot[ed] the use of false affidavits of service" by paying the process server company "no more than $20 per completed service, of which the individual process servers received only $3 to $6," JA163, and by declining to make any payment for unsuccessful service attempts. JA157; JA162-JA163; *see also* JA154-JA155 (noting a 1986 New York state report had "concluded that low pay for process servers was the primary cause of sewer service").

Plaintiffs allege that the affidavits of merit were also false. SA5. Each of the affidavits of merit was drafted by a single affiant, and stated that the affiant "'maintain[ed] the daily records and accounts in the regular course of business, including records maintained by and obtained [from the] assignor,'" and was "'thereby fully and personally familiar with, and [had] personal knowledge of, the facts and proceedings relating to the within action.'" JA164-JA165; SA7-SA8. But according to plaintiffs, the affidavits were "purposely drafted in this manner in order to give court personnel the impression that [the debt collectors] have met the statutory requirements for obtaining a default judgment, when in fact, [they] have not and cannot meet these requirements." JA165-JA166. Indeed, the district court found that the affiant "sign[ed] hundreds of affidavits a week, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what he was signing." SA11.

2. Plaintiffs filed suit on behalf of themselves and others similarly situated, alleging that the above scheme violated the FDCPA, 15 U.S.C. § 1692e and § 1692f. JA207. Plaintiffs also alleged violations of the federal Racketeering Influenced and Corrupt Organizations Act and state law. JA208-JA218.

The district court denied defendants' motion to dismiss the FDCPA (and other) claims, and later granted class certification. JA103; SA1. In denying the motion to dismiss the FDCPA claims, the district court (as relevant here) explained that the

alleged conduct was "false, deceptive or misleading" under § 1692e, and "unfair or unconscionable" under § 1692f. JA118-JA120. The district court explained that "[p]laintiffs do not merely allege that the . . . defendants 'lack physical evidence of the debt,' but that they knowingly authorized [the filing of] false affidavits of merit— misleading both the Civil Court and consumer-defendants—to secure default judgments." JA119-JA120.

3. This case is now on interlocutory appeal from the district court's class-certification decision under Fed. R. App. P. 23(f).

## ARGUMENT

### THERE IS NO BLANKET IMMUNITY FROM FDCPA LIABILITY FOR CONDUCT DIRECTED TO THIRD PARTIES.

The consumer plaintiffs here allege that the debt-collector defendants employed unlawful means to obtain default judgments against consumers in state-court debt-collection actions, in violation of 15 U.S.C. §§ 1692e and 1692f. According to plaintiffs, defendants failed to serve consumers with process, but nevertheless filed affidavits falsely asserting that such service was made. And the defendants also allegedly filed affidavits of merit falsely asserting that the affiant was "fully and personally familiar" with the facts constituting the claim.

This matter is currently before this court on interlocutory appeal from the district court's class certification decision. See Fed. R. Civ. P. 23(f); JA427. Although the bulk of the parties' briefing is devoted to addressing whether the class-certification

8

standards of Rule 23 have been met, the government expresses no interest in those matters. Rather, the government's interest in this matter relates to particular arguments defendants have made regarding the legal scope of the FDCPA, and our participation in this matter is simply to apprise the Court of the Bureau and Commission's view of that specific issue.

In particular, defendants urge that the Act does not apply at all to "communications made either to third parties not affiliated with the debtors that the statute seeks to protect, or in circumstances otherwise having no chance of debtor deception." *See* Leucadia Br. at 35; *see also* Harris Br. at 40 ("[C]ommunications made to persons other than the consumer, at least where the consumer did not 'stand in the shoes' of the recipient, are not actionable under the FDCPA."). Applying that theory here, defendants urge that any deception was perpetrated only on the New York City civil court, and not the consumer. Leucadia Br. at 15; Harris Br. at 20.

As explained below, defendants' reading of the Act is incorrect. But as an initial matter, their assertion that the alleged conduct here was *not* "directed at consumers" and that there was "no chance of debtor deception" is flawed. *See* Harris Br. at 43; Leucadia Br. at 35. In the ordinary course of civil litigation, submissions to a court must also be served on the opposing party. *See* 22 N.Y. COMPL. CODES R. & REGS. tit. 22, § 208.4 ("every paper filed in court shall have annexed thereto appropriate proof of service on all parties where required"); *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012) (noting that "[t]hough rarely made

9

'directly' to the consumer debtor," representations by debt collector lawyers in court "routinely come to the consumer's attention and may affect his or her defense of a collection claim"). Anticipating this point, the law firm defendants urge that the false affidavits were "not even seen by [the consumers] before entry of the default judgment." Harris Br. at 43. But this point only underscores the implausibility of defendants' claim that any misconduct was directed only to the court: to the extent that the falsehoods here were not seen by anyone other than the court, it is because of another aspect of the misconduct—one that was unquestionably "directed at" consumers: the failure to properly serve those consumers with legal process. Indeed, taken as a whole, the alleged scheme is best understood as having been directed at consumers rather than the court, since it is the consumers who were ultimately injured, albeit via fraud on the court.

In any event, even accepting *arguendo* defendants' understanding that any misconduct here was "directed at" the state court and not at consumers, the contention that such misconduct is immune from FDCPA liability is mistaken.

1. As relevant here, plaintiffs raise claims under 15 U.S.C. §§ 1692e and 1692f. *See* JA118-JA120. Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

10

This language is purposefully expansive. As this Court has explained, "[i]t is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices." *Piples*, 886 F.2d at 27; *see also Jerman*, 559 U.S. at 602 (highlighting the FDCPA's "broadly worded prohibitions on debt collector misconduct"). Thus, "courts are not at liberty to excuse violations where the language of the statute clearly comprehends them." *Piples*, 886 F.2d at 27; *see also Heintz v. Jenkins*, 514 U.S. 291, 295-96 (1995) (declining to "read the statute as containing an implied exemption for those debt-collecting activities of lawyers that consist of litigating"); *Goldman v. Cohen*, 445 F.3d 152, 155 (2d Cir. 2006) (applying the "plain language of the FDCPA"); *Romea v. Heiberger & Associates*, 163 F.3d 111, 118 (2d Cir. 1998) (declining to "disregard the plain language of the FDCPA").

Properly understood in accordance with their plain language, the provisions at issue here apply to the conduct alleged in this case even if, in some sense, that conduct was directed at a third party. First, there is no textual basis for limiting Sections 1692e and 1692f, as defendants urge, to conduct "directed at" a consumer. Nor is there any textual basis for excluding conduct that is only meant to deceive or mislead a state court or other third party. On its face, Section 1692e broadly prohibits the use of "*any* false, deceptive, or misleading representation or means *in connection with* the collection of any debt." *Cf. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (giving the phrase "in connection with" a "broad interpretation"). Similarly, Section 1692f bars, without limitation, "unfair or unconscionable means" of

11

collecting debts. Neither provision contains any requirement that the relevant misconduct be directed at the consumer.

Second, defendants' contention that the Act excludes "communications made . . . to third parties not affiliated with the debtors that the statute seeks to protect," Leucadia Br. at 35, is contradicted by some of the specific examples of unlawful conduct listed in Sections 1692e and 1692f. For example, 15 U.S.C. § 1692e(8) prohibits as a "false, deceptive, or misleading representation or means" the act of "[c]ommunicating . . . to *any person* credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." This provision thus protects consumers from false communications made to third parties, including (for example) credit reporting agencies. *See Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 285 (2d Cir. 2013) (noting that under § 1692e(8) "once a debt has been disputed, a debt collector cannot communicate the debtor consumer's credit information *to others* without disclosing the dispute" (emphasis added)). Similarly, 15 U.S.C. § 1692f(5) provides that it is "unfair or unconscionable" for a debtor to "caus[e] charges [such as collect-call charges] to be made to *any person* for communications by concealment of the true purpose of the call." *See Todd v. Collecto, Inc.*, 732 F.3d 734, 738 (7th Cir. 2013) (relying in part on § 1692f(5) to conclude that "the reach of § 1692f is readily apparent, and we conclude that anyone aggrieved by a debt collector's unfair or unconscionable collection practices can fall within the provision's zone of interest").

12

Third, other FDCPA provisions are expressly limited to communications received by a consumer. *See, e.g.*, 15 U.S.C. § 1692c(a) (providing that "a debt collector may not communicate *with a consumer* in connection with the collection of any debt" in certain circumstances (emphasis added)). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Rusello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and citation omitted).

In sum, even assuming that the alleged conduct here was *not* directed at consumers, *see supra* pp. 9-10, it unquestionably falls within the plain language of Sections 1692e and 1692f. As alleged, defendants perpetrated fraud on a massive scale to obtain tens of thousands of default judgments against consumers in debt-collection actions without having to defend or substantiate the merits of their claims as required by New York state law.[4] The allegations thus unambiguously state a claim that defendants used "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and also used "unfair

---

[4] New York courts have explained that "the granting of a default judgment does not become a 'mandatory ministerial duty' upon a defendant's default" and that "the plaintiff must present some proof of liability so that the reviewing court can determine that the 'prima facie validity' of the uncontested cause of action has been established." *Gagen v. Kipany Productions Ltd*, 735 N.Y.S.2d 225, 227-28 (App. Div. 3d Dep't 2001); *see Atlantic Cas. Ins. Co. v. RJNJ Services, Inc.*, 932 N.Y.S.2d 109, 111 (App. Div. 2d Dep't 2011) (holding that plaintiff had failed to satisfy this requirement).

13

or unconscionable means to collect . . . any debt," *id.* § 1692f. *Cf.* S. Rep. No. 95–382 at 1, 4, 7 (describing debt collection abuse as including "simulating legal process" and "simulating court process," and indicating that "utilizing bogus legal documents" is prohibited).

2. Defendants make no effort to explain why the conduct alleged here does not fall within the plain text of Sections 1692e and 1692f. Indeed, defendants' briefs contain no discussion of Section 1692f, which in and of itself provides an independent basis for FDCPA liability on the facts alleged here. Defendants nevertheless claim that the Act contains an implied and categorical exclusion for all "communications made either to third parties not affiliated with the debtors that the statute seeks to protect, or in circumstances otherwise having no chance of debtor deception." *See* Leucadia Br. at 35. That argument lacks merit.

a. Defendants argue that allowing plaintiffs to obtain recovery under the Act for misconduct directed at third parties would not further the Act's consumer-protection purposes. Leucadia Br. at 35; Harris Br. at 40. That claim fails to advance defendants' position.

First, where (as here) the statutory language is clear, a court may not "rewrite the statute so that it covers only what [it] think[s] . . . Congress really intended." *Lewis v. City of Chicago*, 130 S. Ct. 2191, 2200 (2010). "[V]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Mertens* v. *Hewitt Associates*, 508 U.S. 248, 261 (1993).

Thus, as this Court has explained in the context of the FDCPA, "[w]e are not at liberty to substitute a view different from that expressed by Congress in the legislative enactment." *Pipiles*, 886 F.2d at 27. Absent any textual basis for reading Sections 1692e and 1692f to exclude communications to third parties, defendants' contention that such an exclusion would be consonant with the Act's purposes is simply beside the point. *Cf. Heintz*, 514 U.S. at 295-96 (declining to "read the statute as containing an implied exemption for those debt-collecting activities of lawyers that consist of litigating").

Second, contrary to defendants' suggestion, reading Sections 1692e and 1692f as written to encompass communications to third parties *does* protect the consumer, and far more effectively than the reading defendants propose.[5] For instance, the Supreme Court has made clear that conduct in debt-collection litigation is subject to the Act's prohibitions. *See Heintz*, 514 U.S. at 299. On defendants' view, however, debt collectors may obtain a blanket immunity from those prohibitions simply by failing to serve process on the consumer and thus keeping the consumer ignorant of any misconduct, or by claiming that the misconduct was directed at the court rather than at the consumer. It is difficult to fathom how such a result serves the Act's

---

[5] Contrary to defendants' suggestion (*see, e.g.*, Leucadia Br. at 35), consumers are not the only intended beneficiaries of the Act's protections. This is evident in § 1692k(a), which provides that "any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person." (emphasis added).

purposes. Moreover, defendants' view "would give a competitive advantage to debt collectors who press the boundaries of lawful conduct," *Jerman*, 559 U.S. at 602, and would thus run contrary to Congress's goal of "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

In addition, acceptance of defendants' theory would not simply hinder consumers' own efforts to obtain redress through private civil actions. The enforcement authority of the Bureau, the Commission, and other federal agencies under the FDCPA depends on the existence of a violation of the Act. *See* 15 U.S.C. § 1692*l*(a)-(c). If communications with third parties were categorically outside the Act's purview, the FDCPA would not authorize governmental enforcement no matter how egregious the conduct.

b. Narrowing their focus to misconduct directed specifically to courts, defendants posit that "[s]tate courts and state bars are perfectly capable of policing the conduct of lawyers and the adequacy of state-court filings without the intervention of the FDCPA." Harris Br. at 42; *see also* Leucadia Br. at 37-38. But the FDCPA provides an independent federal cause of action for violations of its provisions, and that cause of action exists even where other laws or ethical standards also bar the same conduct. Thus, "courts are not at liberty to excuse violations [of the FDCPA] where the language of the statute clearly comprehends them." *Pipiles*, 886 F.2d at 27.

16

Indeed, this same argument has now twice been raised and dismissed by the Supreme Court. In *Heintz v. Jenkins*, the Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." 514 U.S. at 299. The Court rejected the claim that "Congress intended, silently and implicitly, to create a . . . broad[] exception, for all litigating attorneys, from the Act itself." 514 U.S. at 297. In reaching that conclusion, the Court gave no weight to the debt collector's argument that Fed. R. Civ. P. 11 and its state-law equivalents "already regulate the type of litigation activity challenged by Jenkins' complaint" and that such rules "are the appropriate method of regulating the type of misconduct claimed by Jenkins." Br. for Pet'rs, *Heintz v. Jenkins*, No. 94-367, 1994 WL 706068, at \*20-\*21 (1994). Similarly, in *Jerman v. Carlisle*, the Court held that an attorney could be held liable under the FDCPA for conduct in litigation even when that conduct is based on a reasonable mistake of law. 559 U.S. at 581. The Court again rejected an argument akin to that raised by defendants here: that reading the FDCPA as applying to mistakes of law would be "tantamount to congressional control of attorney advocacy under the FDCPA, subjecting even the most ethical attorneys to lawsuits by non-clients for exercising professional judgment." Br. for Respondents, *Jerman v. Carlisle*, No. 08-1200, 2009 WL 4247965, at \*45 (2009). The Court explained that "[t]o the extent the FDCPA imposes some constraints on a lawyer's advocacy on behalf of a client, it is hardly unique in our law." 559 U.S. at 600.

17

c.  Defendants also purport to find support for their position in case law.  But, significantly, no court has accepted defendant's sweeping contention that conduct directed at third parties is fully immune from FDCPA liability.  To the contrary, a number of courts of appeals have concluded that such conduct *is* actionable under the Act.  For example, in *Hemmingsen v. Messerli & Kramer, P.A.*, plaintiffs claimed, as most relevant here, that a law firm had violated § 1692e "by making false statements and misrepresentations in a memorandum filed in [a] state court [debt-collection] action." 674 F.3d at 815.  The district court, in the decision on review, had rejected those claims on the exact ground urged by defendants here: that the law firm "made allegedly false representations only to the state court judge."  *Id.* at 818.  But on appeal the Eighth Circuit rejected the district court's reasoning.  *Id.* at 818-19 ("We are unwilling to adopt the district court's broad ruling that false statements not made directly to a consumer debtor are never actionable under the Act.").  [6]  And in so ruling, the court substantially cabined an earlier Eighth Circuit decision, *Volden v. Innovative Fin. Sys.*, 440 F.3d 947 (8th Cir. 2006), on which defendants here rely.  *See* 674 F.3d at 818.

Likewise, in *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007), the Fourth Circuit held that a plaintiff could bring a claim under § 1692e and § 1692f

---

[6]  The Eighth Circuit ultimately affirmed the district court's judgment on other grounds, namely, that in the specific circumstances presented, the district court judge had not been misled.  674 F.3d at 819.

based on allegations that, as part of its summary judgment motion, the defendant law firm had made false statements to the debtor's attorney regarding the amount of debt owed and had improperly asserted a right to attorney's fees. *Id.* at 233-34. In doing so, the court rejected the law firm's arguments—akin to the arguments raised here— that there is a "blanket common law litigation immunity from the requirements of the FDCPA" or, alternatively, that communications to a debtor's attorney are not subject to the FDCPA. *Id.* at 230, 232-33. *See also Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (holding that "§ 1692f(1) prohibits 'unfair or unconscionable means,' regardless of the person to whom the communication was directed"); *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 774-75 (7th Cir. 2007) (Posner, J.) (holding that misrepresentation made by debt collector to the consumer's lawyer is actionable under §§ 1692e and 1692f, and explaining that "[t]hese sections do not designate any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity").

For their part, defendants chiefly rely on two cases. First, they point to the Seventh Circuit's divided decision in *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011). In that case, plaintiff raised a claim under § 1692e (but not § 1692f) based on allegations that, as part of a state-court debt collection action, the defendant debt collector submitted an exhibit that looked like, but was not, a recent credit card bill indicating the amount owed. *Id.* at 939. The debt collector did this to take advantage of a state law allowing debts to be established through submission of a

19

recent bill or statement. *Id.* at 940. Despite acknowledging the fraudulent nature of the debt collector's actions, the majority held that the FDCPA "does not extend to communications that would confuse or mislead a state court judge." *Id.* at 940, 944. Judge Tinder rejected that conclusion, concurring only in the result. *See id.* at 944-49 (Tinder, J., concurring).

Significantly, the majority and Judge Tinder agreed that the "Act's language is not specifically limited to statements directed at consumers." *Id.* at 941; *see also id.* at 948 (Tinder, J., concurring) ("'[T]he use of the judicial process is unquestionably a means by which debts are collected, and I struggle to find in the language of the statute any reason why statements or representations made during the use of the judicial process should be categorically excluded from its ambit."). Nevertheless, the majority narrowed the reach of the statute's plain text based on its own assessment of "the Act's purposes." *Id.* at 942. In particular, the majority reasoned that "the Act and its protections do not extend to third parties" and that "nothing in the Act's text extends its protection to anyone but consumers and those who have a special relationship with the consumer." *Id.* at 943, 944. (The *O'Rourke* majority did not explain the relevance of such reasoning given that the injured plaintiffs in that case *were* consumers.)

This Court should decline to adopt the *O'Rourke* majority's flawed reasoning. To begin with, in a more recent decision, the Seventh Circuit has disclaimed the core of the *O'Rourke* majority's reasoning, and limited that decision's scope. *See Todd*, 731

20

F.3d at 737-38. Specifically, the court explained that Congress clearly intended to "extend protection beyond consumers," and stressed that a reading of the Act that limited its protections to consumers would be "in tension with the text of several provisions of the FDCPA, as well as the act's legislative history and much appellate precedent interpreting it." *Ibid.* And, as particularly relevant here, the court declined to extend *O'Rourke*'s holding to claims under Section 1692f. *Id.* at 738.

In addition, adopting *O'Rourke*'s reasoning would require this Court to depart from the bedrock principle that "[i]n the ordinary case, absent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks and citation omitted); *see also Pipiles*, 886 F.2d at 27 ("courts are not at liberty to excuse violations where the language of the [FDCPA] clearly comprehends them"). Defendants cannot plausibly contend that their reading of the Act is compelled by "Congress's clear intention," or that the government's would "yield patent absurdity."

Second, defendants rely on *Kropelnicki v. Siegel*, 290 F.3d 118 (2nd Cir. 2002), while acknowledging that the relevant portions of that decision were entirely dicta. In *Kropelnicki*, plaintiff claimed that the debt collector had violated § 1692e by filing papers in a state-court debt collection action after having told the plaintiff's attorney it would not do so without first contacting him. *Id.* at 127. In dismissing those claims on other grounds, this Court suggested—while expressly declining to "rule" on the

issue—"that alleged misrepresentations to attorneys for putative debtors cannot
constitute violations of the FDCPA," because "[w]here an attorney is interposed as an
intermediary between a debt collector and a consumer," the attorney "will protect the
consumer from a debt collector's fraudulent or harassing behavior." *Id.* at 127-28.
The Ninth Circuit employed equivalent reasoning in holding that communications to
a consumer's attorney are not actionable under the FDCPA. *Guerrero v. RJM
Acquisitions LLC*, 499 F.3d 926, 935 (9th Cir. 2007) ("[I]t appears that Congress
viewed attorneys as intermediaries able to bear the brunt of overreaching debt
collection practices from which debtors and their loved ones should be protected.").
A number of appellate decisions post-dating *Kropelnicki*, however, have properly
rejected this reading of the Act. *See, e.g.*, *Sayyed*, 485 F.3d at 232-33; *Evory*, 505 F.3d at
774-75; *Allen*, 629 F.3d at 368; *see also Guerrero*, 499 F.3d at 942 (W. Fletcher, J.,
dissenting in part) (examining the statute's language and concluding that "it is
impossible to conclude that all otherwise prohibited conduct is permitted merely
because it is directed at a debtor's attorney"). And, in any event, the logic employed
in *Kropelnicki* and *Guerrero* has no application to this case because there was no
attorney involved. And as alleged here, the state courts were hindered from
themselves "protect[ing] the consumer," because defendants engaged in outright
fraud that deprived the court of the benefit of adversarial proceedings. *Cf. Evory*, 505
F.3d at 775 (noting that "[a] false claim of fact in a dunning letter may be as difficult
for a lawyer to see through as a consumer").

In short, this Court must apply the text of the FDCPA as Congress has written it, without limiting its plain scope based on defendants' incorrect assessment of the Act's purposes. This Court should accordingly reject defendants' attempt to read into the Act a blanket immunity for conduct that is "directed at" third parties.

## CONCLUSION

For the foregoing reasons, this court should hold that the alleged conduct here is actionable under the Fair Debt Collection Practices Act.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
  *General Counsel*

JOHN F. DALY
  *Deputy General Counsel for Litigation*

THEODORE (JACK) METZLER
  *Attorney*
  *Federal Trade Commission*

MEREDITH FUCHS
  *General Counsel*

TO-QUYEN TRUONG
  *Deputy General Counsel*

**/s/ David M. Gossett**
DAVID M. GOSSETT
  *Assistant General Counsel*

SARANG VIJAY DAMLE
  *Senior Counsel*

JESSICA RANK DIVINE
  *Attorney*
  *Consumer Financial Protection Bureau*
  *1700 G Street NW*
  *Washington DC 20552*
  *(202) 435-7069*

NOVEMBER 2013

24

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **5,774 words**, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word 2010.

                                        **/s/ David M. Gossett**

                                        DAVID M. GOSSETT

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2013, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I further certify that I will cause **6** paper copies of this brief to be filed with the Court within three business days.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

   /s/ **David M. Gossett**
DAVID M. GOSSETT

**STATUTORY ADDENDUM**

**15 U.S.C. § 1692e.  False or misleading representations.**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

A1

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title. *(Pub. L. 90–321, title VIII, §807, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877; amended Pub. L. 104–208, div. A, title II, §2305(a), Sept. 30, 1996, 110 Stat. 3009–425.)*

## 15 U.S.C § 1692f. Unfair practices.

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

      (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

      (B) there is no present intention to take possession of the property; or

      (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*(Pub. L. 90–321, title VIII, §808, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879.)*