13-2742-cv
Monique Sykes, et al. v. Mel S. Harris & Associates, LLC, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
——————————

August Term, 2013

(Argued: February 7, 2014　　　Decided: February 10, 2015)

Docket Nos. 13-2742-cv, 13-2747-cv, 13-2748-cv

——————————

MONIQUE SYKES, REA VEERABADREN, KELVIN PEREZ, CLIFTON
ARMOOGAM, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

v.

MEL S. HARRIS AND ASSOCIATES LLC, MEL S. HARRIS, TODD FABACHER,
MICHAEL YOUNG, KERRY LUTZ, ESQ., LR CREDIT 18, LLC, L-CREDIT, LLC,
LEUCADIA NATIONAL CORPORATION, LR CREDIT, LLC, LR CREDIT 10,
LLC, SAMSERV, INC., WILLIAM MLOTOK, BENJAMIN LAMB, DAVID
WALDMAN, JOSEPH A. ORLANDO, MICHAEL MOSQUERA, JOHN
ANDINO, LR CREDIT 14, LLC, LR CREDIT 21, LLC, PHILIP M. CANNELLA,

*Defendants-Appellants.*[1]

——————————

Before: JACOBS, CALABRESI, and POOLER, *Circuit Judges.*

————————————

[1] The Clerk of the Court is directed to amend the caption as above.

Defendants Leucadia National Corporation, a company that purchases consumer debts, Mel S. Harris and Associates, a law firm with a significant debt-collection practice, and Samserv, Inc., a process server, appeal from the September 4, 2012 class certification opinion and March 28, 2013 class certification order of the United States District Court for the Southern District of New York (Denny Chin, *Circuit Judge*).

The district court's March 28, 2013 order certified two classes. The first class, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, comprised "all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants . . . assert[ing] claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961; New York General Business Law (GBL) § 349; and New York Judiciary Law § 487." Special App'x at 46. The second class, certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, comprised "all persons who have been sued by the Mel Harris defendants as counsel for the Leucadia defendants in . . . New York City Civil Court and where a default judgment has been obtained. Plaintiffs in the Rule 23(b)(3) class assert claims under RICO; the Fair

2

Debt Collection Practices Act, 15 U.S.C. § 1692; GBL § 349; and New York

Judiciary Law § 487." Special App'x at 47.

We conclude that the district court did not abuse its discretion in certifying

either class.

Affirmed. Judge Jacobs dissents in a separate opinion.

_____

PAUL D. CLEMENT, Bancroft PLLC, Washington, DC
(Candice Chiu, Bancroft PLLC, Washington, DC; James R.
Asperger and Maria Ginzburg, Quinn Emanuel Urquhart &
Sullivan LLP, New York, NY; Marc A. Becker, London, UK;
Brett A. Scher, Kaufman Dolowich & Voluck LLP, Woodbury,
NY, *on the brief*), *for Defendants-Appellants Mel S. Harris LLC,
Mel S. Harris, Michael Young, David Waldman, Kerry Lutz, and
Todd Fabacher*.

MIGUEL A. ESTRADA, Gibson, Dunn & Crutcher LLP,
Washington, DC (Scott P. Martin, Gibson, Dunn & Crutcher
LLP, Washington, DC; Michael Zimmerman, Zimmerman
Jones Booher LLC, Salt Lake City, UT; Lewis H. Goldfarb and
Adam R. Schwartz, McElroy, Deutsch, Mulvaney & Carpetner
LLP, Morristown, NJ; Mark D. Harris, Proskauer Rose LLP,
New York, NY, *on the brief*), *for Defendants-Appellants Leucadia
National Corporation, L-Credit, LLC, LR Credit, LLC, LR Credit 10,
LLC, LR Credit 14, LLC, LR Credit 18, LLC, LR Credit 21, LLC,
Joseph A. Orlando, and Philip M. Cannella*.

JACK BABCHIK, Babchik & Young LLP, White Plains, NY, *for
Defendants-Appellants Samserv, Inc., William Mlotok, Benjamin
Lamb, Michael Mosquera, and John Andino*.

MATTHEW D. BRINCKERHOFF, Emery Celli Brinckerhoff &
Abady LLP, New York, NY (Jonathan S. Abady, Debra L.
Greenberger and Vasudha Talla, Emery Celli Brinckerhoff &
Abady LLP, New York, NY; Josh Zinner, Susan Shin and
Claudia Wilner, New Economy Project, New York, NY;
Carolyn E. Coffey and Ariana Lindermayer, *of counsel to*
Jeanette Zelhoff, MFY Legal Services, New York, NY; Charles
J. Ogletree, Jr., Harvard Law School, Boston, MA, *on the brief*),
*for Plaintiffs-Appellees.*

JEAN CONSTANTINE-DAVIS, AARP Foundation Litigation,
Washington, DC, *on behalf of Amici Curiae AARP, National
Association of Consumer Advocates, and National Consumer Law
Center, in support of Plaintiffs-Appellees.*

DANIELLE F. TARANTOLO, New York Legal Assistance
Group, New York, NY, *on behalf of Amicus Curiae Consumer
Advocates, in support of Plaintiffs-Appellees.*

SARANG VIJAY DAMLE, Senior Counsel, Consumer
Financial Protection Bureau, Washington, DC (Meredith
Fuchs, General Counsel, To-Quyen Truong, Deputy General
Counsel, David M. Gossett, Assistant General Counsel, Jessica
Rank Divine, Attorney, Consumer Financial Protection
Bureau, Washington, DC; Jonathan E. Nuechterlein, General
Counsel, John F. Daly, Deputy General Counsel for Litigation,
Theodore (Jack) Metzler, Attorney, Federal Trade
Commission, Washington, DC, *on the brief*), *on behalf of Amici
Curiae The Consumer Financial Protection Bureau and Federal
Trade Commission, in support of Plaintiffs-Appellees.*

POOLER, *Circuit Judge*:

These consolidated appeals are taken from the September 4, 2012 class

4

certification opinion, *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279 (S.D.N.Y. 2012) ("*Sykes II*"), and March 28, 2013 class certification order of the United States District Court for the Southern District of New York (Denny Chin, *Circuit Judge*). Defendants in this case comprise three entities: "(1) various subsidiaries of Leucadia National Corporation ("Leucadia") that purchase and collect consumer debt; (2) Mel S. Harris and Associates LLC ("Mel Harris"), a law firm specializing in debt collection litigation; [and] (3) Samserv, Inc. ("Samserv"), a process service company." *Sykes II*, 285 F.R.D. at 283. Defendants also include "associates of each of the foregoing entities," *id.*, and we respectively refer to them as the Leucadia defendants, Mel Harris defendants, and Samserv defendants (as did the district court).

The district court's March 28, 2013 order certified two classes. The first class, certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, comprises "all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants . . . assert[ing] claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961; New York General Business Law (GBL) § 349; and New York Judiciary Law § 487." Special App'x at 46.

5

The second class, certified pursuant to Rule 23(b)(3) of the Federal Rules of

Civil Procedure, comprised "all persons who have been sued by the Mel Harris

defendants as counsel for the Leucadia defendants in . . . New York City Civil

Court and where a default judgment has been obtained. Plaintiffs in the Rule

23(b)(3) class assert claims under RICO; the Fair Debt Collection Practices Act

[(FDCPA)], 15 U.S.C. § 1692; GBL § 349; and New York Judiciary Law § 487."

Special App'x at 47.

We conclude that the district court did not abuse its discretion in certifying

either class.

Affirmed.

## BACKGROUND

We draw our facts from the district court's class certification opinion,

which depended on "the depositions, declarations, and exhibits submitted . . . in

connection with" the motion for class certification. *Sykes II*, 285 F.R.D. at 283. The

district court, as was proper, only resolved "factual disputes to the extent

necessary to decide the class certification issue." *Id.* (citing *In re Initial Public*

*Offering Sec. Litig.*, 471 F.3d 24, 27, 41–42 (2d Cir. 2006). It did not resolve "factual

assertions relate[d] to the merits . . . but state[d] them as the parties' assertions,"

and we will follow that practice. *Id.* Where we are required to supplement the background as laid out by the district court by virtue of the arguments of the parties on appeal, we will also refer to the depositions, declarations, and exhibits which formed the record before the district court at class certification.

## I.     Plaintiffs

"Monique Sykes, Rea Veerabadren, Kelvin Perez, and Clifton Armoogam are New York City residents who were each sued by various defendants in debt collection actions commenced in New York City Civil Court between 2006 and 2010." *Sykes II*, 285 F.R.D. at 283. Each plaintiff "denies being served with a summons and complaint in their respective action. . . . Defendants, nevertheless, were able to obtain default judgments against them." *Id.*

## II.    Defendants' Alleged Default Judgment Scheme

### A.     Default Judgments

These default judgments, in the words of plaintiffs, are the result of defendants' construction of a "default judgment mill." The "mill" operates in this fashion: first, by obtaining charged-off consumer debt; second, by initiating a debt-collection action by serving a summons and complaint on the purported debtor; and third, by submitting fraudulent documents to the New York City

7

Civil Court in order to obtain a default judgment.

At the first step, "[p]laintiffs allege that the Leucadia and Mel Harris defendants entered into joint ventures to purchase debt portfolios, and then filed debt collection actions against the alleged debtors with the intent to collect millions of dollars through fraudulently-obtained default judgments." *Id.*

At the second step, Mel Harris would employ "a software program . . . designed by [Mel Harris employee] Mr. [Todd] Fabacher." Appellees' App'x at 157. Fabacher is employed as a "director of information technology for Mel Harris." *Sykes II*, 285 F.R.D. at 284. His program "selects and organizes debts for the generation of a summons and complaint for each debt. These documents are signed by an attorney, and bundled together in batches of 50. Each batch is sent to a single process serving company." Appellees' App'x at 157. Further, the process serving company associated with each debt is saved by this computer program, so "the process serving company associated with any particular debt can be readily ascertained." Appellees' App'x at 157.

To effectuate this second step, Leucadia and Mel Harris defendants would hire a process server, often Samserv. *Sykes II*, 285 F.R.D. at 283. Plaintiffs allege that "Samserv routinely engaged in 'sewer service' whereby it would fail to serve

8

the summons and complaint but still submit proof of service to the court." *Id.*
This proof of service was first delivered to Mel Harris, which, "[a]fter process
[wa]s allegedly served, . . . receive[d] from the process serving company an
electronic affidavit of service." Appellees' App'x at 157. After receiving this
affidavit of service, the system designed by Fabacher "automatically organize[d]
and print[ed] a motion for a default judgment [and] an affidavit of merit . . .
within approximately 35 days after the date of service of process." Appellees'
App'x at 157–58.

Having generated these documents, at the third step, "[a]fter a debtor
failed to appear in court for lack of notice of the action, the Leucadia and Mel
Harris defendants would then apply for a default judgment by providing the
court with . . . an 'affidavit of merit' attesting to their *personal knowledge* regarding
the defendant's debt and an affidavit of service as proof of service." *Sykes II*, 285
F.R.D. at 283 (emphasis added).

Before the district court at the class certification stage, there was substantial
evidence of the scope and impacts of this alleged scheme. "Between 2006 and
2009, various Leucadia entities filed 124,838 cases," and Mel Harris represented
Leucadia in 99.63 percent of those cases. *Id.* at 284. "The 'vast majority' of such

cases were adjudicated without appearance by the defendant debtors, indicating the likelihood that a default judgment was entered." *Id.* Further, "[b]etween 2007 and 2010 various Leucadia entities obtained default judgments in 49,114 cases in New York City Civil Court." *Id.*

### B.    Affidavits of Service

The district court concluded that "[b]etween January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants." *Id.* In evaluating the evidence submitted by plaintiffs with respect to Samserv's practice of engaging in sewer service, the district court concluded that there was "substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service." *Id.* This conclusion was based on the fact that "[r]ecords maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time," *id.*, as well as the fact that "[t]here were . . . many other occasions where multiple services were purportedly made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed." *Id.*

10

Plaintiffs point out that the record before the district court also included a number of other irregularities. For example, "in 2,915 instances, a process server claimed to have attempted or completed service *before* the date that the service was assigned to that process server—[a] physical impossibility." Appellees' App'x at 163. Additionally, process servers often reported 60 service attempts in a single day, Appellees' App'x at 183, and the six particular process servers who accounted for a majority of service performed by Samserv for Mel Harris "reported high volumes of service, including hundreds of days on which they claimed to have made more than 40 visits in a single day," Appellees' App'x at 165. However, an experienced process server attested to the fact that "based on [his] experience, . . . it is unlikely that a process server could regularly make more than 25 service attempts at personal residences in one day." Appellees' App'x at 153. Finally, "[t]he six process servers also reported widely divergent rates of personal, substitute, and nail and mail service." Appellees' App'x at 165. There was no evidence in the record at class certification that would explain the divergent rates for the means of service. Plaintiffs finally point out that, despite the district court's order that Samserv defendants produce logbooks recording

11

their service attempts by October 6, 2009, which could ostensibly confirm service, none have been turned over.

## C.     Affidavits of Merit

The district court provided a complete overview of the process for generating affidavits of merit, the facts of which are not challenged on appeal. "The affidavits of merit submitted by the Mel Harris and Leucadia defendants . . . follow a uniform format." *Sykes II*, 285 F.R.D. at 284. Fabacher "attests that he is 'an authorized and designated custodian of records' for" one of the Leucadia entities that owns the charged-off debt, in New York City Civil Court. *Id.* He affirms that because he "'maintain[s] the . . . records and accounts . . . including records maintained by and obtained from [the collection entity's] assignor' . . . he is 'thereby fully and personally familiar with, and [has] *personal knowledge* of, the facts and proceedings relating to the [debt collection action].'" *Id.* (first, second, fourth, and fifth alterations in original) (emphasis added).

The district court explained the crux of the issue as follows:

> Typically, Fabacher does not receive the original credit agreements between the account holders and the creditors. Instead, he receives a bill of sale for the portfolio of debts purchased that includes 'sample' credit agreements and 'warranties' made by the seller regarding the debts in the portfolio. In many instances, such

12

> agreements do not exist. If they do exist, Fabacher's 'standard practice' does not entail reviewing them before endorsing an affidavit of merit. He instead relies on the warranties made by the original creditor . . . .

> Fabacher produces the affidavits of merit for signature in batches of up to 50 at a time. He 'quality check[s]' one affidavit in each batch and if it is accurate, he signs the remaining affidavits in the batch without reviewing them. The quality check consists of ensuring that information printed on the affidavit matches the information stored in the Debt Master database.

*Id.* at 285 (alteration in original). Reviewing these allegations at an earlier stage in the proceedings, the district court concluded that "[a]ssuming 260 business days a year, Fabacher had to have personally (and purportedly knowledgeably) issued an average of twenty affidavits of merit per hour, i.e., one every three minutes, over a continuous eight-hour day." *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 420 (S.D.N.Y. 2010) ("*Sykes I*").

Plaintiffs point out that the practice of Leucadia defendants in purchasing these charged-off debts, which involves acquiring only limited information with respect to the character of this debt, is not uncommon in the secondary consumer debt market. Typical information transmitted in the purchase of a consumer debt will include the consumer's name, address, and the amount owed. *See* Federal Trade Commission, *The Structure and Practices of the Debt Buying Industry*, 34–35

13

(Jan. 2013), *available at*

http://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-

debt-buying-industry/debtbuyingreport.pdf (last visited Feb. 6, 2015). It is

extremely rare, however, that the purchaser of the debt will receive any

underlying documentation on the debt. *Id*.

## III.    Proceedings Below

Monique Sykes commenced this action against "some of the Leucadia, Mel

Harris, and Samserv defendants" on October 6, 2009, alleging FDCPA and GBL

claims. *Sykes II*, 285 F.R.D. at 285. Rea Veerabadren joined the action on December

28, 2009, and "class allegations and RICO claims were added." *Id*. Kelvin Perez

joined the suit on March 31, 2010, at the filing of a second amended complaint,

which added the New York Judiciary Law claim against Mel Harris. *Id*.

Defendants moved to dismiss, and the district court denied the motion. In

adjudicating the motion to dismiss, the district court reasoned, inter alia, that the

FDCPA claims were not time-barred under the relevant one-year statute of

limitations for Sykes and Perez on the grounds that those claims had been

equitably tolled. *Sykes I*, 757 F. Supp. 2d at 421–22. This was because, the district

court found, "sewer service purposefully ensures that a party is never served,

14

[therefore] it is plausible that defendants' acts were 'of such character as to conceal [themselves]' to warrant equitable tolling." *Id.* at 422 (second alteration in original) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349–50 (1874)).

For their part, Samserv defendants moved to dismiss the FDCPA claims on the grounds that they were not "debt collectors" for the purposes of the FDCPA. *Id.* at 423 (citing exemptions for process servers under 15 U.S.C. § 1692a(6)(D)). The district court disagreed, reasoning that the FDCPA "protects process servers only 'while' they serve process," and therefore "Samserv defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits of service remove them from the exemption." *Id.*

Leucadia and Samserv defendants further argued that plaintiffs lacked standing to bring their claims under RICO. *Id.* at 427. This was because, according to defendants, plaintiffs could neither establish an injury to their property interest nor that "the RICO violations were [] the proximate cause of their injuries " *Id.* The district court disagreed, reasoning that "defendants' pursuit of default judgments and attempts to enforce them against plaintiffs proximately caused their injuries, *see Baisch v. Gallina*, 346 F.3d at 366, 373–74 (2d Cir. 2003), which include the freezing of personal bank accounts and incurring of

15

legal costs to challenge those default judgments." *Id.* at 427–28.

Finally, Leucadia and Mel Harris defendants challenged the district court's subject matter jurisdiction under the *Rooker-Feldman* doctrine, "because plaintiffs are effectively appealing from a state-court judgment." *Id.* at 429. The district court rejected this argument as well. First, the district correctly noted that the doctrine would only apply if "a plaintiff invites a district court to review and reject an adverse state-court judgment." *Id.* (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). The district court then concluded that "plaintiffs assert claims independent of the state-court judgments and do not seek to overturn them." *Id.*

Following the district court's decision, plaintiffs moved for class certification, as well as for another opportunity to amend their complaint. *Sykes II*, 285 F.R.D. at 285. The third amended complaint (the operative complaint on appeal) added Clifton Armoogam as plaintiff and an additional Leucadia entity as defendant. *Id.* The district court granted the motion for class certification on September 4, 2012. *Id.* at 294. Leucadia and Mel Harris defendants obtained new counsel after this decision.

On March 28, 2013, the district court adopted plaintiffs' proposed class

16

certification order. The two classes certified are as follows.

Pursuant to Federal Rule of Civil Procedure 23(b)(2), a class is certified of all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been or will be sought. Plaintiffs in the Rule 23(b)(2) class assert claims under [RICO], [GBL] § 349, and New York Judiciary Law § 487.

Pursuant to Rule 23(b)(3), a class is certified of all persons who have been sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been obtained. Plaintiffs in the Rule 23(b)(3) class assert claims under RICO; the [FDCPA]; GBL § 349, and New York Judiciary Law § 487.

Special App'x at 46-47.

## JURISDICTION

The district court exercised jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 15 U.S.C. § 1962k(d). After certification, each defendant timely petitioned for leave to appeal the grant of certification pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. Our court granted these petitions July 19, 2013. We have jurisdiction pursuant to 28 U.S.C. § 1292(e).

## STANDARD OF REVIEW

17

"We review a district court's decision to certify a class under Rule 23 for abuse of discretion, the legal conclusions that informed its decision *de novo*, and any findings of fact for clear error." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 116 (2d Cir. 2013) ("*In re U.S. Foodservice*").

## DISCUSSION

## I.     Legal Standards

### A.     Class Certification

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). Two classes of plaintiffs were certified in this case, under both Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. As such, plaintiffs must meet both the requirements for the particular relief, injunctive or monetary, sought under those two rules, as well as the threshold requirements for class certification under Rule 23(a).

### 1.     Rule 23(a) Prerequisites

Rule 23(a) of the Federal Rules of Civil Procedure provides that a class may be certified only if four prerequisites have been met: numerosity, commonality,

18

typicality, and adequacy of representation. *See Dukes*, 131 S. Ct. at 2550; *accord In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006). Specifically, the Rule provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These remaining requirements "do[] not set forth a mere pleading standard. A party seeking class certification must . . . be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

The Supreme Court has recently clarified the commonality requirement under Rule 23(a). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (internal quotation marks and citation omitted). Interpreting this requirement in the context of sexual discrimination claims in violation of Title VII of the Civil Rights

19

Act, the Court instructed that such claims "must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve *an issue* that is central to the validity of each one of the claims in one stroke." *Id.* at 2551 (emphasis added). Furthermore, the Court noted that in certain "context[s] . . . '[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* at 2551 n.5 (alteration in original) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 (1982)).

### 2.    Rule 23(b)(2) Requirements for Injunctive Relief

Beyond these prerequisites, Rule 23(b) provides additional considerations for a district court to consider prior to the certification of a class. Under Rule 23(b)(2), a class action may only be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R.

Civ. P. 23(b)(2). The Supreme Court has clarified that certification of a class for

injunctive relief is only appropriate where "a single injunction . . . would provide

relief to each member of the class." *Dukes*, 131 S. Ct. at 2557.

### 3. 23(b)(3) Requirements

Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to

proceed by class action, namely, predominance and superiority. Specifically, a

class may be certified only if the district court determines as follows:

> [T]he questions of law or fact common to class members
> predominate over any questions affecting only individual members,
> and that a class action is superior to other available methods for
> fairly and efficiently adjudicating the controversy. The matters
> pertinent to these findings include:
> > (A) the class members' interests in individually controlling the
> > prosecution or defense of separate actions;
> > (B) the extent and nature of any litigation concerning the
> > controversy already begun by or against class members;
> > (C) the desirability or undesirability of concentrating the
> > litigation of the claims in the particular forum; and
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In assessing the justifications for the creation of Rule 23(b)(3) classes

the Supreme Court has observed as follows:

While the text of Rule 23(b)(3) does not exclude from certification
cases in which individual damages run high, the Advisory
Committee had dominantly in mind vindication of the rights of
groups of people who individually would be without effective
strength to bring their opponents into court at all. . . . "The policy at
the very core of the class action mechanism is to overcome the
problem that small recoveries do not provide the incentive for any
individual to bring a solo action prosecuting his or her rights. A class
action solves this problem by aggregating the relatively paltry
potential recoveries into something worth someone's (usually an
attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 388, 344 (7th
Cir. 1997).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (some internal quotation

marks and citations omitted).

With respect to common issues, Rule 23(b)(3), by its plain terms, imposes a

"far more demanding" inquiry into the common issues which serve as the basis

for class certification. *Id.* at 623–24. While the inquiry may be more demanding,

the Supreme Court has also instructed that Rule 23(b)(3) "does *not* require a

plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is]

susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,

133 S. Ct. 1184, 1196 (2013) (internal quotation marks omitted) (alterations in

original). Rather, all that is required is that a class plaintiff show that "common

questions 'predominate.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). That is,

22

"[i]ndividual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner v. Northshore Uni. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).

Furthermore, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001); *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."). The Supreme Court has explicitly determined that it is "clear that individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 131 S. Ct. at 2558. For the purposes of class certification, however, plaintiffs cannot "identif[y] damages that are not the result of the wrong." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1434 (2013). That is, "the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva*, 716 F.3d at 514. Put another way,

[t]he plaintiffs must . . . show that they can prove, through common

23

evidence, that all class members were . . . injured by the alleged
conspiracy. . . . That is not to say the plaintiffs must be prepared at
the certification stage to demonstrate through common evidence the
precise amount of damages incurred by each class member. But we
do expect the common evidence to show all class members suffered
*some* injury.

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)

(internal citations omitted).

Finally, the disjunctive inquiry that district courts must engage in prior to

class certification requires analysis of the predominance of common issues, as

well as a determination that class certification is the superior method for

adjudicating these claims. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) also lists four

factors—individual control of litigation, prior actions involving the parties, the

desirability of the forum, and manageability—which courts should consider in

making these determinations. Fed. R. Civ. P. 23(b)(3)(A)–(D). By the structure of

the rule, these factors seem to apply both to the predominance and superiority

inquiry. However, while these factors, structurally, apply to both predominance

and superiority, they more clearly implicate the superiority inquiry. *See, e.g.*, *Vega*

*v. T-Mobile USA Inc.*, 564 F.3d 1256, 1278 (11th Cir. 2009) ("In determining

superiority, courts must consider the four factors of Rule 23(b)(3).").

24

While Rule 23(b)(3) sets out four individual factors for courts to consider, manageability "is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication." 2 William B. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. West 2014). As a component of manageability, in determining whether a class action in a particular forum is a superior method of adjudication, courts have considered "when a particular forum is more geographically convenient for the parties . . . or, for example, when the defendant is located in the forum state." *Id.* § 4.71.

**B. Claims for Relief**

      **1.    FDCPA**

Plaintiffs allege that Leucadia, Mel Harris, and Samserv defendants acted in violation of various provisions of the FDCPA. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The statute provides for civil liability for a wide range of abusive actions, and plaintiffs focus their claims on violations of Section 1692e and Section 1692f of the statute.

Section 1692e prohibits "false or misleading representations," and provides as follows:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any
> debt. Without limiting the general application of the foregoing, the
> following conduct is a violation of this section: . . . (2) The false
> representation of – (A) the character, amount, or legal status of any
> debt . . . (8) Communicating or threatening to communicate to any
> person credit information which is known or which should be
> known to be false, including the failure to communicate that a
> disputed debt is disputed. . . . (10) The use of any false
> representation or deceptive means to collect or attempt to collect any
> debt . . . .

15 U.S.C. § 1692e(2), (8), (10). Section 1692f, for its part, prohibits a debt collector

from "us[ing] unfair or unconscionable means to collect or attempt to collect any

debt." *Id.* § 1692f. The FDCPA limits actions to those brought "within one year

from the date on which the violation occurs." *Id.* § 1692k(d).

Violations of these provisions expose a debt collector to civil liability.

15 U.S.C. § 1692k. The district court concluded, and defendants do not

meaningfully challenge, that "[l]iability under the FDCPA can be established

irrespective of whether the presumed debtor owes the debt in question." *Sykes II*,

285 F.R.D. at 292; *see also Baker v. G.C. Svcs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)

("The Act is designed to protect consumers who have been victimized by

unscrupulous debt collectors, regardless of whether a valid debt actually

exists."). In the case of a class action, named plaintiffs' damages are capped at

$1,000. 15 U.S.C. § 1692k(a)(2)(A)–(B). Class damages are capped at $500,000 or 1 per centum of the net worth of the debt collector. *Id.* § 1692k(a)(2)(B). Prevailing plaintiffs are also entitled to costs and attorney's fees. *Id.* § 1692k(a)(3). The FDCPA instructs that, in the case of a class action, that damages should be assessed, inter alia, on the basis of "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." *Id.* § 1692k(b)(2).

### 2. RICO

To prevail on their civil RICO claims in this case, "plaintiffs must show (1) a substantive RICO violation under [18 U.S.C.] § 1962, (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation." *In re U.S. Foodservice*, 729 F.3d at 117. Plaintiffs allege Leucadia, Mel Harris, and Samserv defendants together formed a RICO enterprise for the purposes of 18 U.S.C. § 1961(4), which the district court found plausible at the motion to dismiss stage. *Sykes I*, 757 F. Supp. 2d at 426. Plaintiffs further allege here that defendants, as part of this enterprise, engaged in acts of wire and mail

fraud in violation of 18 U.S.C. §§ 1341, 1344, which can serve as predicate acts for

a violation of 18 U.S.C. § 1962(c). The district court concluded that plaintiffs had

plausibly alleged that "defendants' pursuit of default judgments and attempts to

enforce them against plaintiffs proximately caused their injuries, which include

the freezing of personal bank accounts and incurring of legal costs to challenge

those default judgments." *Sykes I*, 757 F. Supp. 2d at 427–28.

### 3.     State Law Claims

Plaintiffs finally bring two claims under state law. First, plaintiffs bring

claims pursuant to New York's General Business Law, which prohibits

"[d]eceptive acts or practices in the conduct of any business, trade or commerce

or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349(a). "To

maintain a cause of action under § 349, a plaintiff must show: (1) that the

defendant's conduct is 'consumer oriented'; (2) that the defendants is engaged in

a 'deceptive act or practice'; and (3) that the plaintiff was injured by this

practice." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (citing *Oswego*

*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529,

532–33 (1995). With respect to the first element, it "may be satisfied by showing

that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Id.*

(alteration in original) (quoting *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S. 2d at 533). The statute provides that an individual "may bring an action . . . to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. L. § 349(h). The law also provides that a court may award attorney's fees and also treble damages "up to one thousand dollars, if the court finds the defendant wilfully or knowingly violated this section." *Id*.

Second, plaintiffs bring a claim pursuant to the New York Judiciary Law against the Mel Harris defendants. New York law provides that "[a]n attorney . . . who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with the intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and . . . he forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Jud. L. § 487.

## II.    Application

### A.    The Proposed Classes Satisfy the Requirements of Commonality & Typicality Under 23(a)[2]

---

[2] As previously noted, the Supreme Court has acknowledged that, in certain "context[s] . . . '[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *Dukes*, 131 S. Ct. at 2551 n.5 (second alteration in original). The district court analyzed both typicality and commonality and found that the

Rule 23(a)'s commonality prerequisite is satisfied if there is a common

issue that "drive[s] the resolution of the litigation" such that "determination of its

truth or falsity will resolve an issue that is central to the validity of each one of

the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. Consideration of this

requirement obligates a district court to determine whether plaintiffs have

"suffered the same injury." *Id.* (internal quotation marks omitted). The district

court concluded that plaintiffs had satisfied the commonality requirement of

Rule 23(a). Specifically, the district court reasoned as follows:

> [Plaintiffs'] overarching claim is that defendants systematically filed
> false affidavits of merit and, in many instances, false affidavits of
> service to fraudulently procure default judgments in New York City
> Civil Court. Whether a false affidavit of merit or a false affidavit of
> service or both were employed in a particular instance, the fact
> remains that plaintiffs' injuries derive from defendants' alleged
> unitary course of conduct, that is, fraudulently procuring default
> judgments.

*Sykes II*, 285 F.R.D. at 290 (internal quotation marks and citation omitted). The

district court thus determined that the common injury in this case, which was the

same for all plaintiffs, is a fraudulently procured default judgment. We conclude

---

proposed class satisfied the typicality requirement "for many of the same reasons
they meet the commonality requirement." *Sykes II*, 285 F.R.D. at 291. Defendants
and plaintiffs agree that in this case, the commonality and typicality
considerations are sufficiently merged to warrant their consideration in tandem.

30

that this commonality determination was not an abuse of discretion.

### 1. Affidavits of Merit

At the outset, Leucadia and Mel Harris defendants principally argue that, by characterizing the common issue in this litigation as one involving the false and fraudulent affidavits of merit, the district court impermissibly discounted the importance of the affidavits of service. Thus, Leucadia defendants suggest that "the district court, by elevating the importance of the affidavits of merit and minimizing the importance of the affidavits of service, impermissibly rewrote Plaintiffs' substantive claims." Mel Harris, likewise, suggest that "the District Court elevated the importance of the affidavits of merit only by impermissibly rewriting plaintiffs' substantive claims to fit the class-action procedure." We disagree. The operative complaint in this case makes clear that both sewer service and false affidavits of merit are necessary to effectuating defendants' alleged scheme. Thus, while the operative complaint alleges that sewer service is "the primary reason" few defendants appear in New York City Civil Court to defend against debt collection actions, plaintiffs have made clear that this is but one component of the overarching debt collection plan effectuated by defendants. Thus, plaintiffs allege that "in order to secure an otherwise legally unobtainable

31

judgment on default, Defendants fraudulently swear to the courts that they have actually served their victims, when they have not, and that they have admissible proof that a debt is owed, when they do not." Joint App'x at 54. We see nothing impermissible in the district court determining that defendants' scheme, which had multiple components, was a "unitary course of conduct" that depended on false affidavits of merit for its success. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

Second, such a framework makes sense, as it is not disputed that these false affidavits of merit are necessary to the scheme to procure fraudulently obtained default judgments based on what is required in state court. The New York City Civil Court has jurisdiction over debt collection actions that seek to recover damages of $25,000 or less. N.Y.C. Civ. Ct. Act § 202. Section 3215 of the New York Civil Practice Law and Rules governs the procedures for obtaining a default judgment in these courts. Section 3215(a) permits plaintiffs seeking "a sum certain" to make an application "to the clerk within one year after the default. The clerk, upon submission of the requisite proof, shall enter judgment for the amount demanded in the complaint . . . ." N.Y. C.P.L.R. § 3215(a). Requisite proof, in turn, is defined in Section 3215(f) as "proof of service of the

32

summons and the complaint . . . and proof of the facts constituting the claim, the default and the amount due by affidavit made by the party." *Id.* § 3215(f). Thus, both affidavits of service, as well as affidavits of merit, are necessary to obtain default judgments, though neither, independently, is sufficient.

Plaintiffs' contention is that Fabacher's statement in each one of the affidavits of merit, that he is "personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to" the default judgment action, *see*, *e.g.*, Appellees' App'x at 10, is false. The reason such statements are false is that Fabacher has not reviewed, nor do defendants actually possess, documents relevant to the underlying debt.

Resolving the question of whether this contention is false "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. With respect to the FDCPA, determining whether Fabacher's statement is indeed false resolves the central basis for FDCPA liability in this case, namely, the prohibition on making "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." 15 U.S.C. § 1692e. Similarly, the prohibition on "deceptive acts or practices," N.Y. Gen. Bus. L. § 349(a), and the prohibition on attorney's engaging in "deceit," N.Y. Jud. L.

33

§ 487, can fairly be said to turn on the falsity of Fabacher's representation of

personal knowledge. Both wire and mail fraud, the predicate acts underlying

plaintiffs' theory of RICO liability, may be established "by means of false or

fraudulent . . . representations." 18 U.S.C. § 1341 (mail fraud); *id.* § 1343 (wire

fraud). False affidavits of merit thus provide independent bases for liability for

each of the claims advanced by plaintiffs. While the resolution of this question

will not address each element of each of these claims, that is not required for

there to be a common question under Rule 23. *See Amgen*, 133 S. Ct. at 1196. The

district court did not abuse its discretion by finding that a fraudulently obtained

state court judgment that depended on the filing of a false affidavit of merit could

serve as a common issue satisfying Rule 23(a).

### 2.    Affidavits of Service

Moreover, even assuming that the district court was required to determine

that the false affidavits of service were susceptible to class-wide proof, we would

still conclude that the district court did not abuse its discretion in finding that the

requirements of Rule 23(a) were satisfied. The district court found, on the basis of

the evidence before it, that there was "substantial support for plaintiffs' assertion

that defendants regularly engaged in sewer service." *Sykes II*, 285 F.R.D. at 284.

34

Further, determining whether to certify a class may require a court "to consider how a trial on the merits would be conducted if a class were certified." *Bell Atl. Corp. v. AT&T Corp.* 339 F.3d 294, 302 (5th Cir. 2003) (internal quotation marks omitted) (discussing predominance requirement under Rule 23(b)(3)).

Plaintiffs articulate two distinct reasons why they will be able to bring forward at trial competent evidence which will prove the fraudulent nature of the affidavits of service. First, they suggest that the affidavits of service will not be entitled to credibility, given the district court's finding that "defendants regularly engaged in sewer service." *Sykes II*, 285 F.R.D. at 284. Absent the affidavits of service, the only other means that Samserv defendants would have at their disposal to prove service would be contemporaneous logbooks, which process servers are required to keep by law. N.Y. Gen. Bus. L. § 89cc. Absent these logbooks, the testimony of process servers cannot be credited. *First Commercial Bank of Memphis v. Ndiaye*, 733 N.Y.S. 2d 562, 565 (N.Y. Sup. Ct. 2001) ("Testimony of a process server who fails to keep records in accordance with statutory requirements cannot be credited.").

Second, plaintiffs aver that, because Samserv defendants have been ordered to turn over their logbooks to plaintiffs, but have not, they will be able to

35

prove fraud by spoliation. Rule 37(b)(2)(A) of the Federal Rules of Civil

Procedure permits, in the case of a failure to comply with a discovery order, the

district court to, inter alia, "direct[] that the matters embraced in the order or

other designated facts be taken as established for purposes of the action, as the

prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). Proof of fraudulent service

might thus be achieved on a class-wide level. Defendants misread the

requirements of Rule 23(a) when they suggest that these theories of class-wide

proof fail to "affirmatively demonstrate [plaintiffs'] compliance with" Rule 23(a).

*Dukes*, 131 S. Ct. at 2551. All that must be proven, at this stage, is that "there are *in*

*fact* sufficiently . . . common questions of law or fact." *Id.* Anticipating proof of

failures of service in the manner suggested by plaintiffs is in keeping with

demonstrating a common question of fact based on the district court's obligation

to anticipate "how a trial on the merits would be conducted if a class were

certified." *Bell Atl. Corp.*,  339 F.3d at 302 (internal quotation marks omitted).

In sum, the district court did not abuse its discretion in determining that

plaintiffs had demonstrated sufficiently common questions of law or fact to

satisfy the prerequisites of Rule 23(a).

### B. The District Court did Not Abuse its Discretion in Certifying the 23(b)(3) Class

While Rule 23(b)(3) also speaks in terms of commonality, it imposes a "far more demanding" inquiry. *Amchem*, 521 U.S. at 623–24. By its terms, it anticipates the existence of individual issues: the class may only be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The mere existence of individual issues will not be sufficient to defeat certification. Rather, the balance must tip such that these individual issues predominate. But the district court must establish that a class action is superior to "other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). We conclude that the district court did not abuse its discretion in finding these requirements met, and thus certifying this class under Rule 23(b)(3).

### 1. Common Questions of Law and Fact Predominate

Defendants submit that individual issues will predominate over common issues in this case because the district court will be forced to confront individual issues with respect to damages, timeliness, and service. We conclude that the district court did not abuse its discretion in finding that these issues, even if they

are individualized in certain respects, do not predominate over class issues.

### a.    Damages

In making its decision on the propriety of class certification, the district

court reasoned as follows:

> Every potential class member's claim arises out of defendants'
> uniform, widespread practice of filing automatically-generated, form
> affidavits of merit based on 'personal knowledge' and, in many
> instances, affidavits of service, to obtain default judgments against
> debtors in state court. Whether this practice violates the FDCPA,
> New York GBL § 349, New York Judiciary Law § 487, and/or
> constitutes a pattern of racketeering activity in violation of 18 U.S.C.
> § 1962(c) and (d) does not depend on individualized
> considerations. . . . The Court recognizes that should defendants be
> found liable on some or all of these claims, individual issues may
> exist as to causation and damages as well as to whether a class
> member's claim accrued within the applicable statute of limitations.
> This, however, does not preclude a finding of predominance under
> Rule 23(b)(3).

*Sykes II*, 285 F.R.D. at 293.

Plaintiffs' operative complaint seeks three kinds of damages: statutory

damages; "actual and/or compensatory damages . . . in an amount to be proven at

trial"; and what plaintiffs refer to as "incidental damages." Joint App'x at 219–20.

It is not disputed that statutory damages under GBL § 349 can be assessed on the

basis of common proof, as they are capped at $50. N.Y. Gen. Bus. L. § 349(h).

38

Furthermore, Congress has devised a generally applicable formula for class action damages under the FDCPA, one which caps damages at $500,000 and provides that district courts consider, among other factors, the scope of the violations of the FDCPA as well as the number of individuals implicated by fraudulent debt collection practices. 15 U.S.C. § 1692k(b)(2).

The only individualized damages inquiries that "may exist," *Sykes II*, 285 F.R.D. at 293, are those that turn, in plaintiffs' words, on "the return of the money extracted from them as a result of . . . fraudulent judgments," as well as incidental damages. We conclude that inquiries into these damages are not sufficient grounds on which to conclude that the district court's determination that individualized damages issues will not predominate in this case was an abuse of discretion. In the first place, plaintiffs point out that the amount of any money extracted from plaintiffs is stored by defendants themselves. Because the evidence necessary to make out such damages claims, while individual, is easily accessible, such individual damage considerations do not threaten to overwhelm the litigation. *See Leyva*, 716 F.3d at 514.

Second, defendants misstate the central holding of *Comcast* in an attempt to advance the argument that individual damages issues predominate in this case. It

is true that the Court, in *Comcast*, reversed a grant of class certification on the

grounds that individual damages issues precluded certification. But these

damages claims were individual because, based on undisputed evidence, the

plaintiffs' "model f[e]ll[ ] . . . short of establishing that damages [were] capable of

measurement on a classwide basis." 133 S. Ct. at 1433. This was only so, however,

because the sole theory of liability that the district court determined was common

in that antitrust action, overbuilder competition, was a theory of liability that the

plaintiffs' model indisputably "failed to measure" when determining the

damages for that injury. *Id*. This is not the case here. The common theory of

liability that plaintiffs advance is dependent on a fraudulent course of conduct

that was allegedly engaged in by defendants, in violation of multiple federal and

state statutes. That liability model is uniquely tied to the damages, which

plaintiffs claim they are entitled to with respect to each claim that they advance,

whether under the FDCPA, RICO, or state statutes. *Comcast* did not rewrite the

standards governing individualized damage considerations: it is still "clear that

individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 131 S. Ct. at 2558.

All that is required at class certification is that "the plaintiffs must be able to

show that their damages stemmed from the defendant's actions that created the

40

legal liability." *Leyva*, 716 F.3d at 514. Plaintiffs in *Comcast*, admittedly, could not

do so. Plaintiffs here have satisfied that standard.

Third, defendants suggest that the district court did not engage in the

"rigorous analysis" required at the class certification stage. In doing so, they

emphasize that the district court's statement that individualized questions "do[]

not preclude a finding of predominance under Rule 23(b)(3)" was not sufficient

to make out the opposite conclusion, namely, that common questions did

predominate. *Sykes II*, 285 F.R.D. at 293. Defendants' quest for magic words

overlooks the vast number of common issues that the district court identified as

necessary to resolve this litigation. It is true that the law of this Circuit is that the

fact that "damages may have to be ascertained on an individual basis . . . is . . . a

factor that we must consider in deciding whether issues susceptible to

generalized proof 'outweigh' individual issues." *McLaughlin v. Am. Tobacco Co.*,

522 F.3d 215, 231 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond &*

*Indem. Co.*, 533 U.S. 639 (2008), *as recognized by In re U.S. Foodservice*, 729 F.3d at

119. However, from the above it is clear that individual damages did factor into

the district court's analysis. The district court simply found that these individual

considerations did not outweigh other issues which were common, such as the

following:

> (1) whether defendants' practice of filing affidavits of merit and/or affidavits of service with respect to the plaintiff class members violates the FDCPA; (2) whether defendants collectively constitute a RICO enterprise within the meaning of 18 U.S.C. § 1961(4); (3) whether defendants have engaged in a pattern of racketeering activity in connection with the collection of debt in violation of 18 U.S.C. § 1962(c) and (d); (4) whether defendants have used deceptive acts and practices in the conduct of their businesses in violation of New York GBL § 349; and (5) whether the Mel Harris defendants have engaged in deceit and collusion with intent to deceive the courts and any party therein in violation of New York Judiciary Law § 487.

*Sykes II*, 285 F.R.D. at 293. Defendants concede that each of these questions is one that is common to the members of the class certified under Rule 23(b)(3). They merely quibble with the district court's assessment that, on balance, these ultimate issues of liability outweigh the individualized concerns that they raise. On reviewing the district court's certification order, this is not a sufficient contention on which we may rely to conclude that the district court abused its discretion in certifying this class.

### b. Timeliness

The district court acknowledged, as well, that individualized issues of timeliness may inhere in the class "should defendants be found liable on some or

42

all of these claims." *Id.* at 293. Defendants argue, again, that the district court was wrong to find that the presence of such individual issues did not indicate that individual issues would predominate. Plaintiffs respond that they do not invoke equitable tolling. Plaintiffs are correct: in support of their motion for class certification before the district court, plaintiffs averred that they "do not seek to include as class members persons whose claims accrued outside the statute of limitations for each substantive claim. . . . Indeed, only individuals whose claims accrued within one year prior to the filing of the Complaint will seek relief on the FDCPA claim." *Sykes v. Mel Harris & Assocs.*, No. 09-cv-8486 (DC), ECF No. 99, at 27.

Defendants point out that the district court had earlier relied on equitable tolling in order to determine that the claims of Sykes and Perez were timely under the FDCPA. They do not claim that plaintiffs are estopped from arguing that equitable tolling does not apply based on the district court's determination that Sykes and Perez could bring actions under the FDCPA on the basis of equitable tolling. *Sykes I*, 757 F. Supp. 2d at 413. Rather, the only argument with any impact advanced by any of the defendants with respect to this matter is one made by Mel Harris defendants, who argue that disclaiming equitable tolling

43

"simply trades (without eliminating) a serious Rule 23(b)(3) predominance problem for a Rule 23(a) adequacy problem: Class counsel's decision to abandon equitable tolling may render the remaining claims a marginally better 'fit' for class treatment. But that comes at the expense of class members they represent who have claims that are timely only because of equitable tolling . . . ."

We see no merit in this contention. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless "plaintiff's interests are antagonistic to the interest of other members of the class." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The fact that some class members may advance RICO, GBL, and Judiciary Law claims on the basis of the date that the complaint was filed (as they have longer statutes of limitations, *see Gaidon v. Guardian Life Ins. Co. of America*, 727 N.Y.S. 2d 30, 34 (2001) (three years for GBL claims), *Lefkowitz v. Applebaum*, 685 N.Y.S. 2d 460, 461 (2d Dep't 1999) (three years for New York Judiciary Law); *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 156 (1987) (four years for RICO)) does not mean the interests of these class members are antagonistic to those other members of the class that also advance FDCPA claims.

While it may be true that disclaiming equitable tolling for Sykes and Perez

44

may necessitate the district court to limit the sorts of claims that these named plaintiffs may bring, that is a determination for the district court to make in the first instance. It is certainly not a justification for reversing the district court's grant of class certification: at the most, if Sykes's and Perez's FDCPA claims are time-barred, this only means that they cannot assert claims under the FDCPA. The practical import of such a rule is that Sykes and Perez may be members of a subclass, advancing only a portion of the claims certified under Rule 23(b)(3). Such subclasses are contemplated by the Federal Rules, *see* Fed. R. Civ. P. 23(c)(5), and may be certified after the original certification order is upheld. *See Marisol*, 126 F.3d at 378 (holding that the district court did not abuse its discretion in certifying the class but suggesting that prior to trial the district court "ensure that appropriate subclasses are identified").

It is within plaintiffs' prerogative to disclaim equitable tolling, and they may do so without sacrificing the adequacy of representation, especially as defendants make no actual attempt to show why such a disclaimer may be antagonistic. It is for the district court to determine the impact of this disclaimer on the specific claims particular plaintiffs may bring, but it may do that at a

future date, without our disturbing the class certification order.[3]

### c.   Causation

The district court also determined that individual causation issues may exist in this case, *Sykes II*, 285 F.R.D. at 293, but nevertheless found that such causation issues would not predominate. We agree.

Individual issues related to causation in this case are formulated by defendants on appeal as individual issues related to service. Thus, for example, Mel Harris advance the argument that "a class member who was properly served and paid debts that he actually owed has sustained a radically different 'injury' from an unserved member subject to a default judgment for a debt he did not owe." Likewise, Leucadia defendants submit that "where the entry of judgment resulted from a debtor's failure to appear despite adequate notice, the debtor

---

[3] For similar reasons, defendants'—and the dissent's, *see infra* Op. pp. 20–21—contentions regarding the inappropriateness of certifying a class to bring claims against Samserv, when Samserv admittedly did not serve process on all individuals who were sued or will be sued in New York City Civil Court by Mel Harris on behalf of Leucadia, are also misplaced. Plaintiffs who were not served by Samserv allege no FDCPA or GBL claims against Samserv—they only bring RICO claims. Carving out such claims may also be the subject of an appropriate subclass under Rule 23(c)(5), but this is for the district court to determine in the first instance. *See Marisol*, 126 F.3d at 379 ("Rule 23 gives the district court flexibility to certify subclasses as the case progresses and as the nature of the proof to be developed at trial becomes clear.").

must articulate a different theory of injury." None of these contentions are availing.

First, with respect to the FDCPA claims, the district court concluded that the existence of an underlying debt was unnecessary in order to establish liability under that statute. *Sykes II*, 285 F.R.D. at 292. Affidavits of merit, submitted to the Civil Court, were allegedly fraudulent in attesting to "personal knowledge" of the existence of such underlying debt, and were also necessary to obtaining the default judgments that plaintiffs allege were fraudulently obtained. We fail to recognize any individualized causation issues with respect to plaintiffs' claims under the FDCPA. *See Baker*, 677 F.2d at 777 (actual debt is not necessary to bring claims under the FDCPA).

Second, where causation does seem most relevant to us, and where we presume the district court recognized such individualized causation issues, was with respect to plaintiffs' claims under RICO. This is because RICO requires that the alleged injury to plaintiffs' "business or property . . . was by reason of the substantive RICO violation." *In re U.S. Foodservice*, 729 F.3d at 117. This causation analysis will require the district court to identify (1) the property interest that is protected by RICO, as alleged by plaintiffs, and (2) whether the injury to that

47

interest was caused by the RICO violation. The district court at least found that the injuries to plaintiffs included "freezing of personal bank accounts and incurring of legal costs to challenge those default judgments." *See Sykes I*, 757 F. Supp. 2d at 427–28. Defendants do not challenge that this is a sufficient property interest on appeal. Nor do they bring forward any evidence that the damage to these property interests was not the result of default judgments. What they do argue, however, is that if a debt was actually owed, and a default judgment was achieved by means of proper service, a plaintiff cannot actually be an injured party under RICO to the extent that defendants extracted money based on a default judgment. The argument has force. But it remains a single arguably individual issue among the myriad common issues that we have already noted. We will not upset the district court's determination that plaintiffs have carried their burden to show that common issues predominate on the basis of defendants' construction of this hypothetical class plaintiff alleging one particular claim.

Third, none of the potential causation issues related to service suggest that Samserv is not a proper class defendant in this case. It is true that Samserv was kept in this litigation with respect to the FDCPA claims on the basis that it could

48

not claim the benefits of the FDCPA's exemption for process servers on the grounds that the district court concluded, at the motion to dismiss stage, that plaintiffs adequately alleged that Samserv engaged in sewer service. *Sykes I*, 747 F. Supp. 2d at 423. This does nothing to absolve Samserv of claims under RICO, however, which premises Samserv's liability on its participation in a RICO conspiracy. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–97 (1985). Nor, based on our conclusions regarding the amenability of class claims regarding common proof of the falsity of Samserv's affidavits of service, *supra* at pp. 34–36, does it mean that Samserv is not a proper defendant with respect to plaintiffs' FDCPA claims.

In short, the district court properly considered the evidence before it. It concluded that, while individual issues existed in this case, they did not predominate over common issues. Defendants wish the district court had performed this balancing equation differently. But that is not sufficient for us to find that the district court abused its discretion in certifying this class under Rule 23(b)(3).

### 2. Proceeding by Class is a Superior Method of Adjudication

#### a. Defendants' Theory of Superiority is Unpersuasive

49

Mel Harris defendants raise, for the first time on appeal, the novel theory that the district court's superiority analysis was incorrect because it undervalued the obligation to consider the "desirability . . . of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). In particular, Mel Harris suggest that "[i]f the gravamen of this case . . . really were the adequacy of the affidavits of merits filed with the New York City Civil Court, surely *that* court is the superior forum to hear the complaint and devise any remedies."[4]

This is a fine rhetorical point that depends for its strength on a complete misreading of (1) the jurisdiction of the New York City Civil Court, (2) the

---

[4] The dissent intimates that Mel Harris cannot be expected to have previously raised this superiority theory, as their arguments below were tailored to plaintiffs' emphasis on sewer service, which involved questions of fact unique to each debtor. *See infra* Op. p. 10. According to the dissent, class counsel's shift in the focus of the complaint, to the submission of false affidavits of merit, accounts for the new state-forum argument. But this explanation falls flat, as any shift in the focus of plaintiffs' allegations has not affected the nature of defendants' contentions. Mel Harris defendants continue to insist that resolution of plaintiffs' claims will require "individualized showings," now related to the affidavits of merit, which will result in "one hundred thousand mini-trials." Further, the state procedural remedy the dissent endorses to address these claims concurrently, *see infra* Op. pp. 8–14, could have been raised by Mel Harris before the district court, as that provision applies to sewer service, *see* N.Y. C.P.L.R. § 5015(c) (providing, upon application of an administrative judge, for en masse vacatur of default judgments obtained, inter alia, by "fraud, misrepresentation, . . . *lack of due service*, . . . or other illegalities") (emphasis added)).

requirements of Rule 23(b)(3), and (3) the gravamen of plaintiffs' complaint.

In the first place, there is no basis to assert that plaintiffs' claims even could be heard as a class in the New York City Civil Court. These courts have jurisdiction only over those actions in which the value of the controversy is $25,000 or less. N.Y.C. Civ. Ct. Act § 202. While individual plaintiffs might seek to bring their actions in such a court based on this amount-in-controversy limitation, there is no basis to conclude that plaintiffs could proceed as a class there. The argument amounts to little more than Mel Harris's expression of a preference that their alleged widespread fraudulent behavior be dealt with in a piecemeal fashion. That is not how plaintiffs have chosen to proceed. The fact that Mel Harris would have preferred plaintiffs to have advanced their claims differently cannot make it a requirement under Rule 23(b)(3).

Second, the forum analysis of Rule 23(b)(3) is not grounded in a consideration of the comparative value of pursuing a claim in federal or state court. Defendants' authorities on this issue, which are apparently the only authorities that have ever conducted a superiority analysis by reference to the availability of relief in a federal or state forum, have not considered claims analogous to those brought by plaintiffs here. *Kamm v. Cal. City Dev. Corp.*, 509

51

F.2d 205 (9th Cir. 1975) dealt with a case in which putative class plaintiffs had

already been represented by the State Attorney General in a prior action with

putative class defendants. *Id.* at 207–08. The same was true of two other cases

defendants rely on for the proposition that analysis of state court action is

required to determine whether a federal forum is superior. *Cartwright v. Viking*

*Indus., Inc.*, 2009 WL 2982887, at * 14 (E.D. Cal. Sept. 14, 2009) (referencing

ongoing state litigation); *Plant v. Merrifield Town Ctr., Ltd. P'ship*, 2008 WL

4951352, at * 3 (E.D. Va. Nov. 12, 2008) (same). While there has been state court

litigation in this case, it is not state court litigation which advances the claims that

plaintiffs advance now. Further, we will not credit the statement of the United

States District Court of the Eastern District of Louisiana, that "strains on the state

judicial system after Hurricane Katrina" supported a federal forum for particular

plaintiffs' claims, as support for Mel Harris's contention that analysis of the

superiority requires a consideration of the comparative merits of a state or federal

court. *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 610 (E.D. La. 2006). The

*Turner* court purported to consider the value of state versus federal court writ

large, but did so only in the context of resource strains on state court, which have

not been alleged here. And this observation was far from necessary to the

holding, given that the district court prefaced this observation by recognizing the value of certifying a class in order to "centralize these proceedings." *Id.* Defendants here seek the opposite of centralization: rather, they seek the fragmentation of each of plaintiffs' claims into, perhaps, hundreds of thousands of actions. The overwhelming weight of authority suggests that the forum requirement is one that centers on geography, rather than a comparative analysis of the benefits available under either federal or state law. Rubenstein, *supra*, § 4.71. Mel Harris's authorities have not convinced us otherwise.

Third, Mel Harris's argument depends on a misreading of the gravamen of plaintiffs' allegations. It is ultimately not the procedures of New York City Civil Court, or the ultimate default judgments, that are at issue in this case. It is, rather, the fraudulent means that defendants employed in order to obtain those judgments. These means are the basis of claims that sound both in federal and in state law. To the extent that the district court had jurisdiction to entertain these claims, we see no basis for rewriting Rule 23(b)(3)(C) to impose a limit on the district court's power.

Even if we were to credit Mel Harris's argument that forum analysis requires us to consider state fora as opposed to federal fora, we would not

53

conclude that the district court abused its discretion in concluding that

proceeding by class is superior to alternatives for adjudicating these claims. Fed.

R. Civ. P. 23(b)(3). Defendants engage in no other consideration of the 23(b)(3)

factors. They do not even engage with the district court's conclusions that a class

action "is, without question, more efficient than requiring thousands of debtors

to sue individually." *Sykes II*, 285 F.R.D. at 294. Echoing the Supreme Court's

concerns in *Amchem*, 521 U.S. at 617, the district court concluded that "class

members' interest[] in litigating separate actions is likely minimal given their

potentially limited means with which to do so and the prospect of relatively

small recovery." *Sykes II*, 285 F.R.D. at 294 (citing Fed. R. Civ. P. 23(b)(3)(A)).

Nor are we convinced that proceeding in state court is, as the dissent

suggests, "superior in every way" to class action. *See infra* Op. pp. 1, 8–13. New

York law provides for the en masse vacatur of default judgments obtained

through fraud or other illegal means upon the application of an administrative

judge, who "*may* bring a proceeding to relieve a party or parties" from such

judgments. N.Y. C.P.L.R. § 5015(c) (emphasis added). Having initiated this

proceeding, the administrative judge, rather than the judgment defaulter, acts as

the petitioner before a different judge who is to decide the application. *See*, N.Y.

C.P.L.R. § 5015 (McKinney), Practice Commentaries, C5015:13; *see also*, *Mead v. First Trust & Deposit Co.*, 397 N.Y.S. 2d 295, 297 (N.Y. Sup. Ct. 1977) (acknowledging denial of amicus curiae status to legal services corporation that requested proceedings under forerunner provision to § 5015(c) because it "was interested in the outcome of the proceeding"). Notwithstanding its remedial purposes, this discretionary procedure (1) provides plaintiffs no right of action, (2) cannot address the gravamen of the plaintiffs' allegations here as it could only vacate the default judgments against them, and (3) denies plaintiffs any control over the course of the litigation. The dissent's distaste for "hungry lawyers," and aversion to awarding attorneys' fees in class actions, *see infra* Op. pp. 10, 14, cannot justify requiring plaintiffs, under the guise of Rule 23(b)(3)'s superiority analysis, to pass through the threshold of the state courthouse to seek relief that

cannot seriously be entertained as an adequate, let alone superior, substitute for proceeding by class on these claims.

> **b.** **Defendants' *Rooker-Feldman* and Full Faith & Credit Arguments are Unavailing at the Class Certification Stage**

Just how far Mel Harris's superiority arguments fall from the mark of

55

requiring reversal of the district court's class certification order under Rule 23(b)(3)(C) becomes even clearer when considered in light of the two doctrinal bases on which defendants argue that class certification was inappropriate in light of federalism concerns, namely, the *Rooker-Feldman* doctrine and the Full Faith and Credit Act. We take these arguments in order.

*Rooker-Feldman* bars the federal courts from exercising jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). We have clarified that in order to satisfy the requirements of *Rooker-Feldman*, the defendant must satisfy the following four requirements:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock*, 422 F.3d at 85 (internal quotation marks and modifications omitted). The causation requirement is only satisfied if "the third party's actions are produced

by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 88.

The district court concluded, at the motion to dismiss stage, that "plaintiffs assert claims independent of the state-court judgments and do not seek to overturn them." *Sykes I*, 757 F. Supp. 2d at 429. We agree. As explained previously, claims sounding under the FDCPA, RICO, and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments.

Leucadia defendants, for their part, offer the more subtle argument that the causation components of *Rooker-Feldman* required the district court to exclude from its class certification order "remittance" damages, by which Leucadia means the compensatory damages that plaintiffs claim defendants have extracted as a result of the entry of a default judgment. We disagree.

The crux of the issue, as identified by Leucadia, is not simply *Rooker-Feldman*, but rather the requirement that the district court's certification order "define the class and the class claims, issues, or defenses, and must appoint class counsel." Fed. R. Civ. P. 23(c)(1)(B). Leucadia's argument is that the certification order under Rule 23(b)(3), which identifies all of the above but does not exclude

the certain category of damages that Leucadia believes is not cognizable under

*Rooker-Feldman*, finds no basis in the text of Rule 23, nor in the class certification

decisions that we have identified.

Even if we credited Leucadia's contention that the state court judgment

satisfied the causal requirements of *Rooker-Feldman*, rather than acting as

ratification of a harm that resulted from fraudulent conduct on behalf of

defendants, *Hoblock*, 422 F.3d at 85, the contention would have no merit. There is

no textual basis to endorse Leucadia's view that certain categories of damages

must be carved out of a class certification order under Rule 23(c)(1)(B). The

requirements are that the class, the class claims, and issues, be identified. Fed. R.

Civ. P. 23(c)(1)(B). The district court's class certification order did just that: it

identified a class of individuals that it defined as "all persons who have been

sued by the Mel Harris defendants as counsel for the Leucadia defendants."

Special App'x at 47. It further identified the claims as those arising under RICO,

the FDCPA, GBL § 349, and New York Judiciary Law § 487. Special App'x at 47.

There are good reasons for these limited requirements. The district court's

order is not a final statement of the merits, just as class certification is not an

opportunity to "engage in free-ranging merits inquiries." *Amgen*, 133 S. Ct. at

58

1194–95. We see no use in a class certification order that is required to list all

possible defenses to all possible damage claims, nor do we see, in the text of Rule

23, any requirement for it.

Nor, in our view, do defendants' arguments sounding under the Full Faith

and Credit Act fare much better. The act requires that state court proceedings

must be afforded "the same full faith and credit in every court within the United

States . . . as they have by law or usage in the courts of such State . . . from which

they are taken." 28 U.S.C. § 1738. Defendants urge that such doctrine bars us

from considering plaintiffs' damages claims seeking the return of default

judgments, because state courts treated judgments entitling them to recovery as

valid. We decline to consider this argument, however, for the same reasons that

the district court declined to carve out specific damages that might be available to

the class based on its certification order: such a determination is simply not

required under Rule 23(c)(1)(B).[5]

---

[5] It may also be, on full adjudication of the merits of this issue, that the district court may determine that the issue has not been properly raised. The requirement that federal courts afford full faith and credit to state court judgments is an argument that federal courts must give res judicata effect to the state court judgment. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982). Res judicata is an affirmative defense that must be pleaded. *See* Fed. R. Civ. P. 8(c). Defendants have not asserted a res judicata defense in their answers.

59

A word may be in order, however, to illustrate how far afield defendants'
arguments sounding in federalism require us to go from the ultimate merits of
plaintiffs' claims. The parties remonstrate over whether or not Fabacher's
declaration as to "personal knowledge" was in fact required to make out an
application for a default judgment in New York Civil Court. Thus, Mel Harris in
particular have asked us to consider a Directive of the New York Civil Court,
issued in 2009. This directive imposes burdens on third-party creditors seeking
default judgments in addition to those imposed under Section 3215 of the CPLR.
N.Y.C. Civ. Ct. Directive DRP-182 (May 2009). This Directive requires, in
particular, that a third-party debt collector include "[a]n Affidavit of a Witness of
the Plaintiff, which includes a chain of title of the accounts, completed by the
plaintiff/plaintiff's witness." *Id.* This form affidavit only requires the witness to
attest to the chain of title "to the best of [his or her] knowledge." *Id.* Plaintiffs, for
their part, point to a checklist prepared by the New York City Civil Court, which
directs parties pursuing a default judgment to submit "an Affidavit of Facts from
a person with personal knowledge of the facts." New York City Civil Court,
*Entering Civil Judgments*,

http://www.courts.state.ny.us/COURTS/nyc/civil/judgments_atty.shtml#checklist

(last visited Feb. 6, 2015).

Whether or not Fabacher was required to attest to personal knowledge of the underlying debt in his affidavit of merit, as plaintiffs contend, or whether a more lax standard governs his affidavits, as Mel Harris contend, is ultimately irrelevant to adjudicating liability under any of the claims that plaintiffs have brought. What matters is that, in hundreds of thousands of forms, he did attest to this knowledge, despite the undisputed fact, at the class certification stage, that he did not in fact actually review underlying documentation related to these loans. Whatever was required in New York City Civil Court will not decide the issue of liability for these defendants. The conduct of defendants, and the question of whether this conduct was ultimately fraudulent, will decide their liability. The federal system, with its guarantees of concurrent jurisdiction, and the federal laws under which plaintiffs seek relief, permit as much.

3. **We Decline to Decide, in the First Instance, Whether the FDCPA Permits Claims for the False Statements Alleged Here**

Defendants raise a final issue related to the propriety of class certification, namely, the question of whether or not the FDCPA permits a plaintiff to assert claims for a false statement that was made to a party other than the debtor.

61

We must determine the propriety of making a decision on this issue at this stage in the proceedings. Plaintiffs point out that we are not to "engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. And it is undisputed that the question of whether false statements, such as those made by Fabacher in his affidavits of merit, made to third parties are actionable under the FDCPA is a question common to the class under both Rule 23(a) and 23(b)(3): resolving that such statements are not actionable would "resolve an issue that is central to the validity" of the FDCPA claim "in one stroke." *Dukes*, 131 S. Ct. at 2551. Indeed, the district court's class certification decision stated that "there is a question of law as to whether making false representations in court, rather than to a debtor, violates the FDCPA," *Sykes II*, 285 F.R.D. at 290, but ultimately did not pass on the issue. We think this the proper determination, as it is unlikely that the Federal Rules, which require a plaintiff to identify a common question at the class certification stage, also require the district court to resolve that question at the same stage in the litigation. The district court did not commit error in declining to rule definitively on whether the FDCPA covers the false statements at issue in this case.

We decline to address this question, in the first instance,[6] on appeal. *See Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 208 (2d Cir. 2003) ("It is this Court's usual practice to allow the district court to address arguments in the first instance."). We leave it to the district court to decide this issue at a later stage of the litigation.

**C.    The District Court Did Not Abuse its Discretion in Certifying the Rule 23(b)(2) Class**

### 1.    Proposed Injunctive Relief Benefits All Class Members

Injunctive relief is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The district court concluded that such relief was appropriate because of "defendants' uniform filing of false affidavits in state court to fraudulently procure default judgments against putative class members." *Sykes II*, 285 F.R.D. at 293. This injunction, as currently sought by plaintiffs, includes four elements: first, a direction that defendants "cease engaging in debt collection practices that violate the FDCPA, RICO, NY GBL § 349, and NY Jud. Law § 487;" second, a

---

[6] We have not ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties. *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002).

63

direction that defendants locate and notify class members that a default judgment has been entered against them and that "they have the right to file a motion with the court to re-open their case;" third, a direction that defendants "serve process in compliance with the law in any and all future actions;" and fourth, a direction that defendants' affidavits of merit in future actions reflect their personal knowledge of the facts. Joint App'x at 219.

1        The Supreme Court has clarified that certification of a class for injunctive

2   relief is only appropriate where "a single injunction . . . would provide relief to

3   each member of the class." *Dukes*, 131 S. Ct. at 2557; *Amara v. CIGNA Corp.*, Nos.

4   13-447(L), 13-526(XAP), 2014 WL 7272283, at *9 (2d Cir. 2014) (noting that the

5   Supreme Court in *Dukes* "simply emphasized that in a class action certified under

6   Rule 23(b)(2), 'each individual class member' is not 'entitled to a *different*

7   injunction'" (emphasis in original) (quoting *Dukes*, 131 S. Ct. at 2557)).  Mel

8   Harris submit that this proposed injunctive relief does not satisfy this standard,

9   because individualized issues of service differentiate class members from one

10   another, and the named plaintiffs will not benefit because they "have already had

11   their default judgments vacated."

12        This claim is without merit. "[R]elief to each member of the class," does not

1    require that the relief to each member of the class be identical, only that it be

2    beneficial. *Dukes*, 131 S. Ct. at 2557–58. And while Mel Harris attempt to refocus

3    the proposed injunctive relief on the affidavits of service, it is clear that the

4    proposed injunctive relief sweeps broadly enough to benefit each class member.

5    There is no support for the contention, for example, that because certain class

6    members received service, they will not be provided relief by the notification

7    proposed by the injunction as well. *See Amara*, 2014 WL 7272283, at *9 (finding

8    decertification of Rule 23(b)(2) class not required where certain class members,

9    who might not benefit from injunction's reformation of retirement plan, received

10   "some benefit in the form of new notice" of changes to the plan). Furthermore,

11   while named plaintiffs have had their default judgments vacated, they might

12   each still be subject to a further action by these same defendants. The district

13   court did not abuse its discretion in concluding that plaintiffs had satisfied the

14   requirements of Rule 23(b)(2).

15       **2.    We Decline to Decide, in the First Instance, Whether RICO**
16            **Permits Private Injunctive Relief**

17       Defendants finally argue that injunctive relief is not available under RICO.

18   For the same reasons that we found the district court did not commit error in

65

1    declining to rule on the availability of relief under the FDCPA, we find that the

2    district court did not commit error in declining to decide, at the class certification

3    stage, whether RICO permits private injunctive relief.

4          Because the district court did not reach this question below, we decline to

5    address it for the first time[7] on appeal. *See Dardana*, 317 F.3d at 208.

6                                    **CONCLUSION**

7          For the foregoing reasons, the opinion and order of the district court is

8    hereby affirmed.

9

---

[7] We have yet to decide whether RICO allows for private injunctive relief. *See, e.g.*, *Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 243 (S.D.N.Y. 2002).

66